## HENNIGH v NEFF

Ohio Appeals, 2nd Dist, Franklin Co

No 2822.   Decided May 13, 1938

Henderson, Wilson, Wyatt & Ranz, Youngstown, Judge McBride, Columbus, for plaintiff-appellant.

Mary Reeble, Miami, Fla., for defendant-appellee.

## OPINION

By GEIGER, J.

Plaintiff states that he has been appointed as administrator of the estate of Mary ·Neff, deceased, by the Probate Court of Mahoning County; that the decedent, Mary Neff, was killed by the defendant, Cyrus Neff on or about the 20th day of October, 1932; that Cyrus Neff as husband of the decedent was named as sole beneficiary in the United States Government War Risk Insurance policy, insuring the life of Mary Neff for the sum of $5,000.00; that on December 6th Cyrus Neff collected as beneficiary the sum of $4396.75 from the United States Veterans Administration and converted this amount to his own use and purposes; that the defendant, having wrongfully, intentionally and feloniously killed the decedent, was not entitled under the laws of Ohio to said sum collected by him, but was precluded from making such collection; that said sum became upon the death of the decedent an asset of her estate; that the collection by the defendant was a fraud upon her estate and that he by collecting the money became a trustee ex male ficio, answerable to her estate, and should be required to account to the plaintiff as administrator for the use.of said sum.

Plaintiff prays that the defendant may be declared a . trustee for· plaintiff; that an accounting may be had; that a judgment may be had against the defendant Neff in the sum of $4396.75 with interest and for other relief.

The petition as originally drawn had the following allegations which are stricken in compliance with the subsequent order of the court:

"Plaintiff further says that on or about April 21, 1933, the defendant was convicted by the Common Pleas Court of Mahoning County, Ohio, of murder in the second degree of the decedent, Mary Neff, on or about October 20, 1932,"
"* * * for which killing he was later found guilty of second degree murder."

After various motions and demurrers had been made and overruled for the most part, the defendant filed an answer to the amended petition admitting that Mary Neff died on or about the 20th of October, 1932; that the defendant was named as beneficiary in the insurance policy insuring her life and denying all other allegations. An amendment to the petition was permitted as follows:   Plaintiff says that the decedent, Mary Neff, was intentionally and feloniously killed by the defendant, Cyrus H. Neff, on or about the 20th of October, 1932.

During the course of the preliminary hearing the court held in substance that

the action is an equitable proceeding to have a trustee declared and for an accounting and that sufficient operative facts have been alleged in plaintiff's petition to apprise defendant of the nature of the claim.

The case came on for trial before the court and a jury and before evidence was taken the defendant moved for a judgment in favor of the defendant on the pleadings that the petition be dismissed and further that all allegations in the petition relating to the conviction be stricken from the petition. Counsel for plaintiff agreed that the matter relating to conviction be stricken, the court reserving the question on the original motion and for the consideration of the motion for a new trial. And thereupon by consent the motion to strike from the petition allegations relative to conviction was sustained, but the allegation that the killing was intentional remained in the petition.

The evidence is meager and consists first, of the deposition of Miss Louise Wick, secretary of the Mahoning Chapter of the American Red Cross, who testified to the presentation by Neff of the insurance policy after the death of his wife and the ultimate payment thereof to the amount of $4396.75, there having been a loan made by the government which reduced the same from the original amount of $5000.00.

Neff appeared as a witness under cross-examination, stating that he knew of the War Risk insurance, but did not know who the beneficiary was and did not find out until after the death of his wife. He had known of the existence of the policy for five years; that he presented the same to Miss Wick for payment and received the money in due course; that the policy had been in a deposit box to which both he and his wife had access. His testimony as to the death of his wife is brief:

"Q. When was it Mrs. Neff was killed?
A. October 20, 1932.
Q. What caused her death, if you know?
A. A shot gun.
Q. Shot gun discharged?
A. Yes, sir.
Q. Who held the shot gun when it was discharged and killed your wife?
A. I did."

Mrs. Monroe, a sister of the deceased woman, testified that her sister was a trained nurse, 42 years of age at the time of her death; that she called at the home of Cyrus Neff on the night of October 20th and she describes the scene of the killing and the action of Neff in admitting her to the house and what he did while she was there, and the fact that she had seen the shot gun at other times. Her sister's body was on the settee in a corner of the living room and there was evidence of a heavy charge having struck the dead woman in the head; that there was a portion of the dead woman's brains on the wall and on the floor, which the husband pushed around on the floor and asked the undertaker to pick up. Other evidence of this witness is not important in determining the question presented. Thereupon the plaintiff rested and a motion was interposed by the defendant for a directed verdict. After argument the court recited the petition in substance and stated that in substantiation of the charge made in the petition, that the defendant wrongfully, intentionally and feloniously killed the decedent, questions asked the defendant on cross-examination and one asked his sister-in-law on direct examination are submitted by the plaintiff as being sufficient to establish the charge made in the petition. The defendant challenges the sufficiency of the proof. The court then recites the testimony of the defendant as heretofore set out and the further statement made by Mrs. Monroe that the defendant said:

"I was trying to—I pointed the gun at her, trying to scare her and: it went off. I was trying to and it went off."

The court states that the question is whether the three questions together with the evidence that the defendant knew of the existence of the policy is sufficient evidence of a second degree murder unexplained. And after commenting upon the law, the court states:

"Certainly it is not and could not be the law if one pointed a gun at another, firmly and honestly believing that the gun was not loaded and he even pulled the trigger and then it was thereby discharged that would not be second degree murder; it would be manslaughter. And certainly there are no facts here on which any inference may be drawn as to any intention. There might have been in the criminal case, but if so, they are not disclosed to this court, and not proven here."

And the court then stated:
"There will be no verdict of the jury. I just sustained the motion to dismiss."

In the presence of the jury the court restated the admissions of the defendant as to the discharge of the gun and stated:

"The court comes to the conclusion that is evidence of manslaughter, the commission of an unlawful act, out falls short of the necessary evidence to show an intentional killing, and since intentional killing is a necessary element of this case, which has in the court's opinion not been shown, the motion has been sustained and you are discharged."

A motion for new trial was filed and overruled. The final entry in the court below was in substance that the cause came on for hearing before a jury and all the evidence for the plaintiff having been heard, the defendant at the conclusion of the introduction of plaintiff's evidence moved to arrest the evidence from the jury and for judgment for the defendant, which motion was sustained. It was ordered that the evidence of the plaintiff be withdrawn from the jury, which is hereby discharged for the consideration of the cause, and that the defendant go hence without day. Motion for new trial overruled. Two notices of appeal were filed by the defendant, one from the order of the court rendered on the 3rd of May, 1937, and one from the final judgment of the court on May 20, 1937, wherein the court ordered that the evidence be withdrawn and the jury discharged. Both notices of appeal were on questions of law.

### ASSIGNMENTS OF ERROR

The plaintiff filed as the assignments of error:

(1) That the court erred in sustaining the motion of the defendant to arrest the evidence from the jury.

(2) That the court erred in refusing to submit to the jury evidence offered by plaintiff and tending to establish the intention of the killing of the plaintiff's decedent.

(3) The same as No. (1).

(4) The court erred in overruling the plaintiff's motion for new trial and rendering judgment upon the findings that there was no evidence tending to establish the claim of the plaintiff.

. The second assignment that the court erred in refusing to submit to the jury the evidence offered by plaintiff seems to refer to additional evidence as to the gun which he sought to disclose by further examination of the defendant, the same relating to admissions as to the way in which the gun

was discharged and that it took some weight not only to pull back the hammer, but to pull the trigger, or some pressure. The court did not permit this evidence.

The court arrested the evidence and decided the case on motion as the result of its conclusion that the evidence adduced fell short of that necessary to show an intentional killing, and since an intentional killing is a necessary element, the motion was sustained.

We are of the opinion that the court was in error in withdrawing this phase from the jury.

The defendant admitted that his wife, Mary Neff, was killed by the discharge of a shot gun held in his hands. This admission we think is sufficient to require the jury to pass upon the case to ascertain whether or not the killing was intentional. It is regretted that in a case where there must be abundant evidence to prove intent, that counsel should submit to a reviewing court such meager testimony which raised an unnecessary question which might readily have been avoided.

The defendant in this case was convicted of murder in the second degree, and now is in the penitentiary serving sentence imposed upon him for that crime; but in spite of that fact, we are met with the argument that the evidence shown in this case does not show a malicious intentional killing.

In Ohio malice may be presumed from the intentional killing not otherwise explained by circumstances. The intent to kill may be presumed from the circumstances surrounding the killing. Where the act forbidden is proved to have been knowingly done no further proof is needed in the absence of justification, since the law presumes criminal intent. The presence of malice or intent to kill must be determined from all the circumstances proven, including the character of weapon. The use of a deadly weapon in taking life raises the same presumption whether other attending circumstances be shown or not; when other facts and circumstances are shown they either strengthen or rebut the presumption so arising from the character of the weapon.

These principles are supported by cases cited in 3 *Ohio Digest* 499, paragraph 8. See **Shinkman v State, 7 Abs 518**; State v Turner, Wright's Rep. 20, 6th Syl.; State v Town, Wright's Rep. p. 75; **Jones v State,**

5] Oh St 331; State v Childers, 133 Oh St 508.

We are, therefore, of the opinion that the court erred in taking the question of malice from the jury. It should have been submitted under proper instructions.

### HAS THE PLAINTIFF SHOWN A RIGHT TO RECOVER AS ADMINISTRATOR OF THE DECEASED INSURED, MARY NEFF?

We are of the opinion that §10503-17 GC is in no way relevant to this case. It provides that no ▪person finally adjudged guilty of murder should be entitled to inherit any of the estate of a person killed, and that with respect to inheritance the person adjudged guilty should be considered as though he had preceded in death the person killed.

This contest centers around the right to recover the money alleged to have been wrongfully collected by Neff from the United States Government on account of an insurance policy issued upon the life of his wife, Mary Neff.

This money was never a part of her estate, but arose out of a contract between her and the United States Government, whereby the government, in the event of her death, should pay the amount of the policy to the party designated.

Here again we regret that counsel was no more generous with information for a reviewing court.

There is no evidence touching the provisions of the policy indicating to whom the money should go in the event the beneficiary was not entitled to take the same. However, it seems to be well settled that in the event the beneficiary is not entitled to the money by virtue of his having been the wrongful instrument in killing the insured, the value of the policy should be paid to the representatives of the insured.

In 70 A.L.R. 1543 it is stated:

"As shown by the earlier annotations. it is generaly held, subject to certain limitations, that, although the beneficiary's right to recover under the insurance contract is forfeited by reason of the felonious killing of the insured by the beneficiary, the insurer is not thereby relieved of liability, but is liable to pay the proceeds of the contract to the insured's estate."

"An insurance company is not absolved from liability on its policy because the beneficiary murders the insured."

"So, where the beneficiary unlawfully kills the insured, he forfeits his right to recover under the policy, a right to sue arises in favor of the estate of the insured as if no beneficiary had been named in the policy."

See other cases cited under this annotation.

"The beneficiary in a life insurance policy cannot recover thereon where the death of the insured is caused by the intentional and felonious act of the beneficiary."

**Filmore v Metropolitan Life Ins. Co., 82 Oh St 208.**

An interesting discussion is disclosed in the case of **Cook, Admr. v Ins. Co., 30 N.P. (N.S.) 247,** where it is held:

"Under the common law principle that no one may be allowed to reap a benefit from his own wrong, a beneficiary of a life insurance policy who has murdered the insured acquires no right or title to the proceeds of the policy."

"The same rule applies to prevent one claiming through or under the beneficiary from taking under the policy * * *."

"Sec 10503-17, GC, is not intended to abrogate or delimit the common law rule, but to establish by the fact of conviction for murder the legal status of a person so convicted with respect to receiving any benefit from the death of the person unlawfully killed."

See Smith v Todd, 155 S. C. 323, 152 SE 506, reported and annotated in 70 A.L.R. 1529.

Without discussing the matter further, we are of the opinion that the administrator of the estate of the deceased insured, Mary Neff, has a right of action against the husband if it develops upon trial that he feloniously killed his wife.

Judgment reversed, cause remanded for further proceedings.

BARNES, PJ, and HORNBECK, J, concur.