## Douglas Electric Corp v. Grace
*[Cite as 8 AOA 31]*

*Case No. 90 CA 01*
*Greene County, (2nd)*
*Decided November 20, 1990*

J. Timothy Campbell, 260 N. Detroit Street, Xenia, Ohio 45385, for Plaintiff-Appellee.

F. Thomas Green, 1324 Wayne Avenue, Dayton, Ohio 45410, for Defendant-Appellant.

FAIN, J.

Defendant-appellant, Mike Grace, dba MG Electric, appeals both from the judgment of the trial court rendered in favor of plaintiff-appellee Douglas Electric Corp. on its complaint, and from the judgment rendered against Grace upon his counterclaim against Douglas Electric and plaintiff-appellee Neal Hastings for defamation.

Grace claims that the trial court erred in finding that Douglas Electric and Hastings did not libel him. Grace further contends that the trial court erred in refusing to reopen the case and accept new evidence and that the trial court erred by overruling his motion for a new trial. Although we reject all of his other assignments of error, we agree with Grace that even when the evidence before the trial court is viewed in a light most favorable to Hastings, reasonable minds can come to but one conclusion, and that is that Douglas Electric and Hastings libelled Grace. Neither the defenses of truth nor of qualified privilege, which Douglas Electric and Hastings now seek to interpose to the libel, were raised in the trial court.

The judgment in favor of Douglas Electric upon its complaint will be affirmed; the judgment in favor of Douglas Electric and Hastings upon Grace's counterclaim will be reversed, and this cause will be remanded for a determination of damages.

### I

Douglas Electric brought this action against Grace asserting claims for materials and labor expended in certain electrical contracting work. Neal Hastings, president and sole owner of Douglas Electric, was joined as a party plaintiff. Grace disputed the original claims by answer, and counterclaimed against both Douglas Electric and Hastings for costs of labor and material and for alleged libel.

After a bench trial, the court rendered a judgment in favor of Douglas Electric for part of its claims, judgment in favor of Grace for part of his counterclaims for material and labor, and judgment in favor of both plaintiffs on Grace's counterclaim for libel.

Grace moved the trial court to reopen the judgment to permit the introduction of additional evidence and for a new trial upon the ground that the adverse judgment upon his counterclaim for libel was contrary to law and against the manifest weight of the evidence. The trial court overruled both motions. Grace appeals from the judgment of the trial court.

The facts giving rise to this appeal are as follows:

Hastings and Grace are electricians in the business of bidding and contracting for electrical construction and repairs. In 1984, Douglas Electric and Hastings, operating as an electrical contractor, entered into an agreement with Grace dba MG Electric. This agreement contemplated assisting each other on jobs requiring additional assistance, including materials and manpower. Much of the exchange of work and materials was only partially documented, and practically all the

documentation was in the hands of Hastings. In fact, much of the conflicting evidence presented at trial pertained to the parties' dispute over labor and materials.

During the trial, James Snyder, owner of Wheel Construction, Inc., testified that he received the following anonymous letter which Hastings later admitted having written and sent on Douglas Electric's behalf:

"April 15, 1988
Wheel Construction Inc.
J. W. Snyder, Owner
111 Ogden Road
Springfield, Ohio 45503

"Dear Sirs:
"I write to you so that you may be informed of fraud and "kick-backs" that are presently undermining your operations. In August of 1987, Jeff Hurley approached Mike Grace, MG Electric, concerning a grave personal problem. Jeff's brother was in big trouble with the law and needed cash to pay attorney fees in an attempt to keep him from going to prison.

"A deal was cut and MG was given four jobs (Wilmington Speedway, Beavercreek Pro Care, Blue Ash Marathon, and Stuckeys gas canopy) in return for several thousand dollars directly to Jeff.

"I recommend you take these allegations and look at these job files for confirmation of facts. I would assume that extras have been added to all of these jobs and would question the validity of each considering the pact between these two people. I would note the lack of bids from MG as an indicator of the above allegation.

"You have a lot at stake to have someone within your company working for themselves instead of you at your risk."

Snyder testified that this letter caused him to cease doing business with Grace. Grace based his libel claim against Hastings and Douglas Electric upon this communication.

## II

Grace's First Assignment of Error is as follows:

"THE TRIAL COURT COMMITTED PRE-
JUDICIAL ERROR IN ENTERING
JUDGMENT ON THE LIBEL ISSUE IN
FAVOR OF PLAINTIFFS AND
AGAINST DEFENDANT."

In its judgment entry, the trial court disposed of Grace's counterclaim for libel as follows:

"Defendant's action for libel has not been proven, and judgment is granted for the Plaintiff thereon."

In its findings of fact and conclusions of law, the trial court addressed the libel issue as follows:

"The Court finds the facts as follows:
"***

"3. Evidence submitted by Defendant regarding libel action is insufficient to demonstrate intent to damage Defendant and his business reputation, as well as insufficient to establish malice and monetary damage to Defendant."

The Court's conclusions of law are as follows:
"***

"3. Douglas Electric Corporation is entitled to judgment in its favor on the libel action as the libel claim of the Defendant was not proven."

Grace contends that the trial court's judgment against him on his claim for libel is contrary to law because Hastings admitted to having written and sent, on behalf of Douglas Electric, a letter that was libellous *per se*, no defenses of truth or qualified privilege were asserted, and there was clear proof that the libellous letter caused Grace to lose the recipient's work.

In their reply to Grace's counterclaim, Douglas Electric and Hastings did not interpose the affirmative defenses of truth or qualified privilege, but contented themselves with a general denial. Grace contends that the trial court was thereby precluded from considering the affirmative defenses of truth or qualified privilege.

A general denial to a claim of defamation is not sufficient to support proof of justification for an otherwise defamatory statement. *Duval v. Davey* (1877), 32 Ohio St. 604, 609-610. In that case, the truth of the defamatory statement was held to have been an affirmative defense that had not been pled, so that proof of the statement's truth was properly excluded. In accord, see *Spencer v The News Publishing Co.* (1947), 79 Ohio App. 519, second paragraph of syllabus, in which it was held that the truth of a libellous statement was not material to a general denial, but was relevant and could be considered in mitigation of damages. See, also, R.C. 2739.02, which seems to set up truth as an affirmative defense to an action for libel or slander.

Because the existence of a qualified privilege is also a justification for a statement that is otherwise defamatory, we conclude that the existence of a qualified privilege is also an affirmative defense that must be pled separately from

a general denial, although the existence of a moral duty to speak--the basis for the qualified privilege--like truth, would be a mitigating circumstance in any event. Both truth and the qualified privilege would be relevant to the issue of malice, since both go to disprove it. Thus, both truth and circumstances amounting to a qualified privilege were relevant to an issue in the case before us, since Grace sought punitive damages on his libel claim, for which malice was required.

It might be argued that the defenses of truth or qualified privilege were tried with the implied consent of both parties, requiring an amendment to the pleadings pursuant to Civ. R. 15(B), since evidence pertaining to both issues was admitted without objection. However, no objection would have been proper, since both types of evidence were relevant to the issue of malice, which was an issue in the case. Thus, Grace's failure to object to that evidence cannot be interpreted as having constituted his implied consent to the trial of affirmative defenses not made up by the pleadings.

"Ordinarily, defamatory statements that injure a person in his trade or Profession are actionable *per se.*" *Smith v. Klein* (1985), 23 Ohio App. 3d 146, 148. We conclude that in his testimony Hastings admitted to having uttered a statement that was libellous *per se.* Hastings testified as follows at pages 82 and 83 of the record:

"Q. Now, just a couple of questions on the Wheel Construction letter that was referred to. You did write that letter?

"A. Yes, sir, I did.

"Q. And the contents of that letter, where did you get the information?

"A. From Mike (Grace).

"Q. So, everything that was in the letter was what Mike told you?

"A. Yes, sir.

"Q. And the sum and substance in your judgment was it was [sic] illegal activity?

"A. Well amoral, unethical. I wasn't concerned about the illegal more than the rest of it.

"Q. And, that letter was sent by you to Wheel?

"A. Yes, sir, it was.

"Q. And other than a copy I think you said went to Mike Grace it didn't go to anyone else?

"A. No, sir.

"Q. And it was all based exactly upon what Mike had told you?

"A. Yes, sir.

"Q. That is where you got the information

"A. That's correct."

Hastings also testified as follows at pp. 72-73 of the transcript:

"Q. And you were working on behalf of Douglas Electric Corporation when you wrote that anonymous letter which you mailed to Mr. Snyder at Wheel in Springfield, is that right.

"A. That's correct.

"Q. Why did you send him an anonymous letter?

"A. Because I only knew for a fact as much as Mike told me the basis of the circumstances. I have been in business for a lot of years and from--

"Q. Why did you make it anonymous?

"A. Because I have had the same thing done to me before.

"Q. People have written you anonymous letters so you wrote an anonymous letter to Mr. Snyder, right?

"A. Yes.

"Q. Mailed it April 15, 1988?

"A. Yes, sir.

"Q. And your intent was to call to Mr. Snyder's attention what you thought you knew to be a fact of some dishonorable business tactics, if not illegal?

"A. Yes, sir.

"Q. And that is what you told Mr. Snyder about Mike Grace, right?

"A. In essence, yes."

The Ohio Supreme Court held in *Hahn v. Kotten* (1975), 43 Ohio St. 2d 237, 244 that:

"A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently, in such cases, there is a legal, as well as a moral, obligation to speak. This is most obvious in the case of those who have entered upon or are considering business dealings with one another.

"***

"A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty right or interest. *The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper*

*occasion, and publication in a proper manner and to proper parties only.*" (Emphasis added.)

Even if the affirmative defense of qualified privilege had properly been before the trial court in the case before us, we conclude that the evidence in the record does not support the existence of a qualified privilege. There was no evidence that Hastings and Snyder had a common interest because the libelous letter was written after Grace's employment with Douglas was terminated, and Hastings had no business association with Wheel Construction. Significantly, the testimony of Wanda Noogle, Hastings's secretary, testified that the libelous letter was not sent in good faith. Rather, she indicated that the letter was intended to pressure Grace into paying his outstanding account with Douglas Electric. "Where the defamation is published (including spoken or written) to someone not within the qualified privilege or is done with actual malice, the privilege will not protect an individual." *Smith v. Klein. supra.*

We conclude that the general denial contained in the reply by Douglas Electric and Hastings to Grace's libel counterclaim was not sufficient to raise the affirmative defenses of truth or the qualified privilege. Even if the qualified privilege had been raised as an affirmative defense, we conclude that there was no evidence to support the existence of a qualified privilege. Grace proved, by Hastings' own admission, that Hastings wrote and sent a letter, on behalf of Douglas Electric, to Wheel Construction that was libellous *per se* There was clear and uncontradicted testimony that Wheel Construction, which had done business with Grace, took its business elsewhere as a result of receiving the letter. Accordingly, we conclude that the evidence in the record established, as a matter of law, that Douglas Electric and Hastings libelled Grace. All that remains necessary is the determination of damages.

Grace's First Assignment of Error is sustained.

### III

Grace's Second and Third Assignments of Error are as follows:

### "SECOND ASSIGNMENT OF ERROR

### "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN REFUSING TO OPEN ITS JUDGMENT AND ACCEPT NEW EVIDENCE.

### "THIRD ASSIGNMENT OF ERROR

### "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN REJECTING DEFENDANT'S MOTION FOR A NEW TRIAL."

Grace argues that during the bench trial, he was unexpectedly confronted with allegedly "fabricated" testimony on behalf of Douglas Electric and Hastings that related to the supplying of certain materials by them to Grace in a particular job contract involving the Ohio Masonic Home. He maintains that the trial court rendered its judgment before he could rebut this testimony with new evidence. In his Second Assignment of Error, Grace also seeks a new trial based on this alleged perjury.

Judgment was entered on July 11, 1989. The record indicated that Grace filed a Motion for Separate Findings of Facts and Conclusions of Law on July 18, 1989. His motion for a New Trial and to Reopen Judgment was filed on July 24, 1989. In that motion, Grace states that with reasonable diligence he could not have discovered and produced at trial the new evidence. The trial court overruled both motions on October 27, 1989.

Grace contends that the trial court erred in overruling his motion for relief from judgment because this newly discovered evidence disclosed that plaintiff's witnesses Hastings and Keller falsely testified to the inclusion of material totaling $6,467 in the Masonic job. Grace claims that it was only after the trial that he learned that these materials were not actually installed at the job site. Grace relies upon his own affidavit and upon the affidavit of the Director of Maintenance at the Ohio Masonic Home to support his alternative contentions.

The granting of a new trial pursuant to Civil Rule 59(A) is within the sound discretion of the trial court. *Highfield v. Liberty Christian Academy* (1987), 34 Ohio App. 3d 311, 315. The standard applied in determining whether or not to grant a new trial upon newly discovered evidence is stated in the third paragraph of the syllabus in *Sheen v. Kubiac* (1936), 131 Ohio St. 52, as follows:

"To warrant the granting of a motion for a new trial based on the ground of newly discovered evidence, it must be shown that (1) the new evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) *it must be such as could not in the exercise of due dili-*

*gence have been discovered before the trial* (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict the former evidence." (Emphasis added.)

Additionally, this court noted in *Wiley v. Nat'l. Garages, Inc.* (1984), 22 Ohio App. 3d 57, that:

"The granting or denial of a motion for relief from judgment under Civ. R. 60(B) is discretionary with the trial court; and, in the absence of a clear showing of abuse of discretion, the trial court's decision should not be disturbed upon appeal." [Citation omitted.]

Grace's factual showing of surprise as grounds for relief from judgment was rather thin. In addition, he has failed to demonstrate how his newly discovered evidence could not have been previously discovered by due diligence. Because Of the liberal discovery rules there is no reasonable explanation why such information could not have been discovered and produced at trial. Grace had every opportunity to gain a clear understanding of his opponents' claim for relief. Further, if Grace was that surprised by the testimony, he should have said so at trial. Instead, the case was submitted to the court. That Grace waived his opportunity for rebuttal is apparent from pages 165-166 of the transcript:

"MR. CAMPBELL. That is all the questions I have, Your Honor.

"THE COURT. Mr. Green, do you have any additional questions?

"MR. GREEN. No, I don't have any further questions.

"THE COURT. The witness will be thanked and excused. Any additional witnesses?

"MR. GREENE. We have no additional witnesses. I would like to offer into evidence our exhibits.

"***

"MR. CAMPBELL. May I have just a few? I don't think we are going to offer any rebuttal, Your Honor.

"THE COURT. Do you want to make a closing statement or do you think I have got it?

"MR. CAMPBELL. I'd submit the case.

"MR. GREEN. We will submit the case.

"THE COURT. I will give you an answer next week. Thank you, gentlemen." (Court adjourned.)

Counsel indicated that he had presented all that he was going to present as evidence, argument or exhibits in his case, and the trial court was entitled to regard the case as submitted. The trial court then promised a prompt decision. Grace now complains that the trial court made good on its promise, thereby entering judgment before Grace had the opportunity to seek to reopen the hearing. We would be loathe to hold that the trial court abused its discretion by living up to its commitment to render a prompt decision in the case.

Grace's Second and Third Assignments of Error are overruled.

IV

Grace's First Assignment of Error having been sustained and his other Assignments of Error having been overruled, the judgment adverse to Grace upon his counterclaim for libel will be reversed, the judgment will be affirmed in all other respects, and this cause will be remanded for a trial on the issue of damages on Grace's counterclaim for libel.

WOLFF, P.J., and WILSON, J., concur.