OPINION
Plaintiff-appellant Bruce A. Lane appeals from the Judgment Entry Decree of Divorce entered on October 30, 1998, and the subsequent Decision and Journal Entry entered by the trial court on January 8, 1999, denying appellant's motion for relief under Ohio Civil Rules 59 and/or 60.
 STATEMENT OF THE FACTS AND CASE.
Appellant Bruce A. Lane and appellee Maria R. Lane were married in October of 1989, in Suffolk County, New York. On April 16, 1996, their son, Dakota, was born. While appellant is a self-employed contractor/excavator, appellee has a four year degree in physical education and had been employed as a caseworker for the developmentally disabled before Dakota's birth. Appellee has also worked in sales. During their marriage, the two resided in Johnstown, Ohio. On November 9, 1996, without appellant's knowledge, appellee took Dakota and returned to appellee's family in New York following an argument that appellee had with appellant the day before. During the same month, appellee filed a Verified Petition with the Family Court of the State of New York alleging that appellant had harassed her and physically abused her over a period of eight years. Appellee alleged in the Petition that appellant had shoved her with great force, had threatened to kill her if she took Dakota to New York, had kicked her, and had abused and/or harassed her in other specified manners. In the Petition, appellee's address was listed as confidential. Thereafter, an Ex Parte Temporary Order of Protection was issued by the Family Court of Suffolk County, New York, on November 12, 1996. Appellant Bruce Lane on December 6, 1996, filed a Complaint for Divorce against appellee in the Licking County Court of Common Pleas, Domestic Relations Division. Pursuant to a Magistrate's Order filed December 13, 1996, appellant was designated temporary residential parent of Dakota during the pendency of the action. On January 9, 1997, a Judgment Entry was filed vacating any and all orders granting temporary custody of Dakota to appellant. Thereafter, the New York action was dismissed on December 11 1996, for lack of jurisdiction. On January 14, 1997, appellee filed an answer and counterclaim. On the same date, appellee filed a Motion for a Temporary Restraining Order against appellant requesting, in part, that appellant be restrained from taking Dakota from the court's jurisdiction or out of Ohio during the pendency of the action and from "harming, harassing, annoying, molesting, interfering with, bothering or physically abusing" appellee and from harassing appellee on the telephone. A Restraining Order to such effect was filed against appellant on January 14, 1997. The same day, appellee filed a Motion for Temporary Orders, requesting that the court temporarily designate appellee as residential parent. Pursuant to an order filed on January 14, 1997, appellee was named as temporary residential parent "during the pendency of this action and until further order of this court" and appellant was awarded supervised companionship with Dakota pursuant to Local Rule 19. Just three days later, appellant filed a motion seeking temporary custody of Dakota. A Magistrate's Order was filed on January 28, 1997, granting temporary custody of Dakota to appellee. An Agreed Entry denying appellant's request for temporary custody was filed on March 21, 1997. A final contested divorce trial was held on August 11, 1997, and August 12, 1997, before a Magistrate. Both parties were present at trial and were represented by counsel. At the trial, witnesses testified on behalf of both appellant and appellee as to their good character and competency as parents. The testimony adduced at the trial revealed that appellee, just prior to Dakota's birth, had resigned from her employment as a case manager with the Licking County MRDD. Since Dakota's birth, appellee has been the primary caretaker while appellant, who is employed as a contractor/excavator, has participated in child care. Appellee testified that following a domestic argument on November 8, 1996, during which appellant became so enraged that he threatened to cut the telephone cord and outside telephone lines and made other threats, she left the marital home the next day with Dakota without appellant's knowledge and went to New York to be with her family. Appellee testified that she fled to New York since, based on appellant's threats and past violent acts, she feared for both Dakota's and her own safety. The Magistrate, pursuant to a Decision filed on October 20, 1997, recommended that, based on the child's best interests, appellee be designated the residential parent of the child and that appellant be granted parental companionship as provided in Local Rule 19.0. The Magistrate further recommended that appellee be permitted to return to New York with Dakota since appellee's testimony that she wanted to reside in close proximity to her parents was reasonable. On April 13, 1998, appellant, with leave of court, filed his objections to the above recommendation of the Magistrate. A response to appellant's objections was filed by appellee on April 27, 1998. Thereafter, on May 5, 1998, appellant filed a memorandum contra to appellee's response to the objections to the Magistrate's October 20, 1997, Decision. Pursuant to a Decision filed on September 8, 1998, the trial court affirmed the Magistrate's Decision regarding the designation of appellee as residential parent of Dakota. A Decree of Divorce was filed on October 30, 1998. Based upon the Magistrate's Decision and the trial court's September 8, 1998, decision, the trial court, in the Decree of Divorce, ordered that appellee be designated the residential parent and legal custodian of Dakota and that appellant be granted parental companionship. Subsequently, appellant, on November 13, 1998, filed a Motion for New Trial pursuant to Civ.R. 59 or, alternatively, Motion for Relief from Judgment pursuant to Civ.R. 60. In his motion, appellant argued that two types of newly discovered evidence had come to light since "the hearing of this cause, since the Magistrate's Decision, and even since the court's Decision of September 8, 1998." The first type of newly discovered evidence concerned the fact that the parties' minor child had been diagnosed with autism whereas the second type "concerns a continuation of the previous disturbing pattern of the [appellee] removing the minor child from the jurisdiction with insufficient regard for the child's involvement or visitation with the [appellant], . . .". A response to appellant's motion was filed by appellee on December 7, 1998. Pursuant to a Decision and Journal Entry filed on January 8, 1999, the trial court denied appellant's Motion for New Trial pursuant to Rule 59 or, alternatively, Motion for Relief from Judgment pursuant to Rule 60. The trial court, in denying appellant's motion for a new trial, specifically stated as follows: "The `evidence' before the court in support of Plaintiff's motion is his own affidavit. There is no affidavit or other `evidence' contra. If plaintiff's allegations are true, he became aware of his son's autism sometime in January of 1998. He failed to bring this to the attention of the court until November 13, 1998. Nowhere in the record is there any mention of this alleged condition. The plaintiff made no mention of this condition in his objections nor has he filed any motion to reallocate parental rights and responsibilities. Given all of the facts of this case the court cannot say that this new evidence would have a high probability of changing the outcome. This is particularly true since the plaintiff failed to support his motion with any medical or other expert testimony or affidavits."
In its January 8, 1998, Decision and Journal Entry, the court also held that:
 "A reasonable time for filing the plaintiff's motion [for relief from judgment] under 60(B)(2) was January 1998. If, as plaintiff claims, there existed an immediate need for parental involvement and cooperation, at the very least he should have filed a motion to reallocate parental rights if not a motion to set aside the court's temporary orders or add new conditions or requirements for his son. Plaintiff alleges he knew of his son's condition and he knew of the magistrate's report and recommendation and yet he never brought this to the attention of the court until he was allegedly denied his visitation."
The trial court further noted that any change of circumstances involving children is "most appropriately addressed by motion, not by a new trial." It is from the October 30, 1998, Decree of Divorce and the trial court's January 18, 1999, Decision and Journal Entry that appellant prosecutes this appeal, raising the following assignments of error:
FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILD'S BEST INTERESTS WILL BE SERVED BY DESIGNATING THE DEFENDANT TO BE THE RESIDENTIAL PARENT OF SAID CHILD AND BY PERMITTING THE DEFENDANT TO RELOCATE WITH THE CHILD TO LONG ISLAND.
 SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION PURSUANT TO CIVIL RULE 59(A)(8) FOR A NEW TRIAL ON ALL ISSUES RELATING TO THE MINOR CHILD OF THE PARTIES, DAKOTA LANE (DOB: 04-16-96), INCLUDING BUT NOT LIMITED TO THAT OF RESIDENTIAL PARENT STATUS, VISITATION, RELOCATION OF THE RESIDENTIAL PARENT WITH THE MINOR CHILD, SUPPORT, ET CETERA, IN THE ALTERNATIVE, PURSUANT TO CIVIL RULE 60 (B)(2), (4) (5) FOR RELIEF FROM JUDGMENT IN THE FORM OF A NEW TRIAL ON THE AFOREMENTIONED ISSUES.
 I
Appellant, in his first assignment of error, argues that the trial court erred and abused its discretion in designating appellee as the residential parent of the parties' minor child and by permitting appellee to relocate with the child to Long Island, New York. "The applicable standard of review is abuse of discretion." Miller v. Miller (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. An abuse of discretion connotes more than an error of law or judgment, it implies the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. Pursuant to R.C. 3109.04(F)(1), the trial court is to consider certain factors in determining the best interest of a child when allocating parental rights and responsibilities for the care of the child. Such section provides as follows:
 "(F)(1) In determining the best interest of a child pursuant to this section, * * * the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense * * *
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
The trial court, in its September 8, 1998, Decision, addressed the statutory factors set forth in R.C. 3109.04(F). In its Decision, the trial court specifically held as follows: "Factor (a), (b), and (h); do not appear to be relevant in this case. The child is of tender years, born on April 16, 1996. The child was not interviewed and has no Guardian Ad Litem. Neither parent has been the subject of any juvenile court complaint alleging abuse, neglect, and abandonment of the child. There are no allegations of violence directed at the child by either party. The record contains sufficient evidence that the magistrate did consider the relevant statutory factors in this case. The lack of a recitation, listing, or regurgitation of the statutory factors in the report and recommendation is not an indication that the magistrate did not consider the relevant statutory factors. It is clear that the magistrate did consider the best interest of the child. The record supports the conclusion that Mother's parenting skills are superior to those of Father. The evidence furthermore establishes that the best interest of the child is that Mother be designated residential parent. Mother has demonstrated a higher degree of sensitivity to the needs of the child, more patience in dealing with the child and a commitment to her child rearing responsibilities. Mother has been the primary care taker of the child. (TR 254 line 18) This is not to say that Father lacks a commitment to the child. Surely he is a loving and caring Father, and there is no doubt that the relocation of mother will be a hardship on Father. However, Father is self-employed and has greater flexibility in his schedule to allow for opportunities to be a significant part of his child's life. In contrast, Mother's work history is one involving a regular workday and a fixed schedule. With regard to the child's interrelationships with grandparent and other persons there is a lack of sufficient evidence to support the Father's belief that Mother will not be cooperative and responsive to the involvement with Father's family. The relationship of the child to Father's family, although limited in scope, is positive and supportive. The relationship of the child to Mother's family is more broad but likewise positive and supportive. There is some evidence to suggest that Father has an unusual relationship with his mother and one sibling, but this is insufficient to deny the child an opportunity to be involved with Father's family. The relationship with the extended family on both sides is equally positive. The evidence is supportive of a positive relationship with Father's family and Mother's family. Father's most serious and genuine complaint relates to Mother's leaving the state with the child and the relocation of Mother to the state of New York (TR 48 line 11, TR 51 lines 12-15). However, the court can not overlook the inappropriate behavior of Father. In addition his admitted lapses in judgment and outbursts are sufficient to justify some of Mother's reactions. (TR 168 lines 23-25, TR 170 lines 18-23 TR 175 line 9). The evidence further supports the conclusions that mother will need to be employed. The support system for Mother and child in New York, not only for child care, but also financially, psychologically, and emotionally is broader in scope and more stable and reliable than it would be in Ohio. Finally, Father's current situation raises issues of concerns for the court in as much as it is short in duration and uncertain as to it's future (TR 153 line 103, CF 207 line 17)."
In his brief, appellant maintains that he should have been designated Dakota's legal custodian and residential parent based on appellee's actions in removing Dakota from Ohio, which he contends were "tactical and premeditated". Appellant further maintains that he is the parent most likely to honor visitation, and that Dakota "appears equally at home in the warm, supportive and nurturing environment of appellant's home, and that appellant is a capable and appropriate caretaker." However, upon review of the record, we find that the trial court did not abuse its discretion in awarding custody of the parties' minor child to appellee since such decision was not unreasonable, unconscionable or arbitrary. Evidence was presented at trial that appellee has been Dakota's primary caretaker since Dakota's birth, that appellee's parenting skills are superior to those of appellant and that appellee is willing to honor visitation. While appellant objected at trial to appellee's relocation to New York with Dakota, the trial court noted in its September 8, 1998, Decision that it could not overlook appellant's "inappropriate behaviors" and that appellant's "admitted lapses in judgment and outbursts" were sufficient to justify some of appellee's reactions. At trial, appellant himself testified that he had once kicked appellee, who was at the time holding Dakota, "in the behind with a sideways kick" after appellee questioned appellant's ability to care for their son. Transcript of Proceedings at 168. In addition, appellant admitted to pushing appellee half way across the room on another occasion and on November 8, 1996, the night of the parties' argument, appellant admitted threatening to take Dakota and to cut the telephone cord. The trial court, in addition to appellant's acts, stressed that appellee has a stronger family support system, including financial, psychological and emotional support, in New York as opposed to in Ohio. Since the trial court did not abuse its discretion in designating appellee the residential parent of the parties' minor child and by permitting appellee to relocate with the child to New York, appellant's first assignment of error is overruled.
 II
Appellant, in his second assignment of error, maintains that the trial court erred in denying appellant's Motion for a New Trial pursuant to Civ.R. 59(A)(8) and Motion for Relief from Judgment under Civ.R. 60(B)(2), (4) and (5). Appellant maintains that newly discovered evidence in the form of the minor child's diagnosis with autism and "a continuation of the previous disturbing pattern of the appellee removing the minor child from the jurisdiction with insufficient regard for the child's involvement or visitation with the appellant, . . ." warrants either a new trial or relief from the trial court's judgment. "Civ.R. 59(A)(8) states that a "new trial may be granted to all or any of the parties and on all or part of the issues" on the ground of "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial." Before a new trial based on new evidence is granted, it must be shown that: "(1) the evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not in the exercise of due diligence have been discovered before the trial, (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict the former evidence." Douglas Elec. Corp. v. Grace (1990), 70 Ohio App.3d 7, 16 citing Sheen v. Kubiac (1936), 131 Ohio St. 52, paragraph three of the syllabus.
While there is a dispute as to when appellant became aware of his son's autism, the trial court, in its January 8, 1999, Decision and Journal Entry denying appellant's motion for a new trial, held as follows: "[g]iven all of the facts of this case, the court cannot say that this new evidence would have a high probability of changing the outcome."
In so holding, the trial court emphasized that appellant had "failed to support his motion with any medical or other expert testimony or affidavits." Since the newly discovered evidence would not probably change the result if a new trial was granted, the trial court did not abuse its discretion in denying appellant's motion for a new trial. Nor did the trial court abuse its discretion in denying appellant's Motion for Relief from Judgment under Civ.R. 60(B)(2), (4) and (5). Civ.R. 60(B) provides, in pertinent part: "On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."
The granting or denial of a Motion for Relief from Judgment under Civ.R. 60(B) is discretionary with the trial court. See Wiley v. Nat'l. Garages, Inc. (1989), 22 Ohio App.3d 57. Our finding in regard to the issue of the child's autism as newly discovered evidence has been dealt with in our previous analysis of the Rule 59(A)(8) motion. In regard to the issue that appellee allegedly is continuing a pattern of "removing the minor child from the jurisdiction with insufficient regard for the child's involvement or visitation with the appellant" we concur with the trial court that appellant should have filed a Motion to Reallocate Parental Rights and Responsibilities based upon the alleged change of circumstances rather than a Motion for Relief from Judgment or a Motion for a New Trial. The trial court found, in regard to appellee's initial leaving of the State of Ohio to go to New York, that appellant's inappropriate behavior justified some of appellee's reactions. If appellant now is alleging that appellee is systematically denying appellant contact with the minor child, the trial court did not abuse its discretion in overruling the 60(B) motion and finding that such allegations are more appropriately brought to the trial court on a Motion to Reallocate Parental Rights and Responsibilities. Appellant's second assignment of error is overruled.
The Judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed.
By Edwards, J. Gwin, P.J. and Hoffman, J. concur