OPINION *Page 2 
{¶ 1} Plaintiff-Appellant Mark A. Johnson ("Johnson") appeals from the March 20, 2007 Journal Entry of the Court of Common Pleas of Union County, Ohio awarding judgment against Defendant-Appellee Ben J. Pierce ("Pierce") and in favor of Johnson in the amount of $902.38.
 {¶ 2} This matter arises out of an automobile accident that occurred on August 29, 2005 in Marysville, Union County, Ohio. On this date, Johnson was stopped at a stop sign at the intersection of Collins Avenue and State Route 4 when his vehicle was struck from behind by a vehicle driven by Pierce. Following the collision, the parties exited their vehicles, exchanged information and left the scene. Later that day, Johnson went to the emergency room at Grady Memorial Hospital in Delaware, Ohio, complaining of stiffness and soreness in his neck. When the pain and stiffness did not subside, Johnson saw Dr. Frank Voegele at the Smith Clinic in Delaware, Ohio. On September 20, 2005 Johnson followed up with his personal physician, Dr. Gerald Kremer, who examined Johnson and prescribed medication for Johnson's pain. Dr. Kremer later prescribed physical therapy for Johnson. Johnson participated in approximately nine physical therapy sessions and was then released from care.
 {¶ 3} On June 23, 2006 Johnson filed a complaint alleging that Pierce negligently operated his automobile, causing injury to Johnson. In his answer, *Page 3 
Pierce admitted liability. However, the issues of proximate causation and the amount of damages were not agreed upon, and this matter proceeded to a jury trial commencing February 15, 2007. At the close of evidence, the jury returned a verdict in favor of Johnson for $745.24. On February 27, 2007 the trial court entered a Judgment Entry consistent with the jury's verdict.
 {¶ 4} On March 2, 2007 Johnson filed a motion for a new trial pursuant to Ohio Civil Rule 59(A)(1) and (6). On March 15, 2007 the trial court issued a Journal Entry wherein the trial court stated that Pierce could agree to "accept an Additur in the sum of $157.14, making the verdict against him and for Plaintiff in the total sum of $902.38" or Johnson's motion for a new trial would be granted. On March 20, 2007 the trial court entered a Journal Entry and ordered that "Defendant has subsequently filed his acceptance of an Additur of $157.14, making the total judgment against Defendant and in favor of Plaintiff $902.38, for which judgment is hereby awarded."
 {¶ 5} Johnson now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED BY FAILING TO GRANT A NEW TRIAL AS THE JURY'S VERDICT WAS INADEQUATE AS AGAINST THE UNDISPUTED EVIDENCE AS TO ALL FOUR (4) ELEMENTS OF DAMAGE PRESENTED BY APPELLANT. *Page 4 
 {¶ 6} In his first assignment of error, Johnson alleges that the trial court erred by failing to grant his motion for a new trial as the jury's verdict was inadequate in light of the evidence presented on damages at trial.
 {¶ 7} The granting of a new trial pursuant to Civ.R. 59(A) is a matter within the sound discretion of the trial court. Douglas Elec. Corp. v.Grace (1990), 70 Ohio App.3d 7, 16, 590 N.E.2d 363. Furthermore, a trial court's denial of a motion for a new trial based upon an allegedly insufficient damages award will not be reversed on appeal unless the trial court abused its discretion. Domestic Linen Supply Laundry Co.v. Kenwood Dealer Group, Inc. (1996), 109 Ohio App.3d 312, 326,672 N.E.2d 184. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 8} Pursuant to Civ.R. 59(A), a new trial may be granted upon any of the following grounds:
 (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 (2) Misconduct of the jury or prevailing party;
 (3) Accident or surprise which ordinary prudence could not have guarded against; *Page 5 
 (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 (5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case.
 (7) The judgment is contrary to law;
 (8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;
 (9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 {¶ 9} In his motion for new trial, Johnson alleged that subsections (1) and (6) of Civ.R. 59(A) specifically applied to the present case. However, although not specifically stated on appeal, Johnson's argument in support of his first assignment of error appears limited to subsection (6). Accordingly, our analysis of Johnson's first assignment of error shall be confined to this subsection.
 {¶ 10} In support of his contention that the trial court erred in failing to grant him a new trial, presumably pursuant to Civ.R. 59(A)(6), Johnson argues that the jury's verdict of $745.24 was against the weight of the evidence as this award was simply an amount of money equivalent to his unpaid property damage claim. Specifically, Johnson argues that the jury's verdict did not consider the evidence presented regarding his medical expenses, lost wages, and pain and suffering. *Page 6 
 {¶ 11} In assessing whether a verdict is contrary to the weight of the evidence, trial courts are vested with wide discretion to determine whether a manifest injustice has been done. Dillon v. Bundy (1991),72 Ohio App.3d 767, 773, 596 N.E.2d 500. In order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiffs claim. Iames v. Murphy (1995), 106 Ohio App.3d 627, 631,666 N.E.2d 1147.
 {¶ 12} We note that the credibility of witnesses is for the jury to decide. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Credibility is always an issue, and it is for the fact finder to impartially determine if a witness is credible and the amount of weight to be afforded to that particular witness' testimony. State v. Bayer (1995), 102 Ohio App.3d 172, 182,656 N.E.2d 1314. The jury may believe or disbelieve any witness. State v.Viola (1947), 51 Ohio Law Abs. 577, 82 N.E.2d 306.
 {¶ 13} In the present case, Johnson testified that he did not notice any pain immediately after the accident. However, Johnson testified that later that day he noticed his neck was getting stiff and he felt it would be best if he went to the emergency room "to be checked out." Johnson testified that in the days following *Page 7 
the accident he was still experiencing pain, his neck was getting stiffer, he was having problems getting dressed, and getting in and out of his vehicle. Johnson testified that on September 10, 2005 he went to the Smith Clinic wherein Dr. Voegele examined him, prescribed an anti-inflammatory medication, and stated that Johnson should follow up with Dr. Kremer ("Kremer") if he did not notice any improvement.
 {¶ 14} Johnson testified that he visited Kremer in mid-September, 2005. Johnson testified that Kremer ordered x-rays, examined his head and neck, and advised Johnson to continue the anti-inflammatory medication for two to three weeks. Johnson testified that approximately two weeks later, he telephoned Kremer's office, spoke to the receptionist, and stated that the medication was not working. Johnson testified that Kremer prescribed physical therapy which he began in early November, 2005 and continued with for three weeks, as directed. Johnson testified that at the end of physical therapy sessions he felt "a lot better" and has not had any serious continuing problems or any subsequent treatment.
 {¶ 15} Johnson also presented the video deposition testimony of Kremer who has been Johnson's physician since 1990. Kremer testified Johnson came to see him on September 20, 2005 with complaints of neck pain and headaches related to the motor vehicle accident. Kremer testified that he ordered cervical spine x-rays and examined Johnson, finding that he "had some muscular tenderness and *Page 8 
spasm in the neck and some limited range of motion in the neck." Kremer testified that he diagnosed Johnson with an acute cervical strain which he felt was related to the motor vehicle accident.
 {¶ 16} Kremer testified that he advised Johnson to use warm, moist heat and prescribed a different anti-inflammatory medication as well as a narcotic pain medicine to use at night. Kremer testified that he advised Johnson that if he did not feel better in a couple of weeks, to let him know and "we'll set up some physical therapy." Kremer testified that after his office received a telephone call from Johnson, he prescribed physical therapy for Johnson. Kremer testified that Johnson met all of the goals of physical therapy and seemed to be completely recovered at the completion of his physical therapy.
 {¶ 17} Additionally, Kremer testified that he believed the emergency room treatment, the treatment by himself and Dr. Voegele, and the physical therapy were all reasonable, necessary, and required as a result of the August 29, 2005 motor vehicle accident. Kremer also testified that he believed it was reasonable for Johnson to miss work for doctor's appointments and physical therapy sessions.
 {¶ 18} Our review of the record reveals that the jury was provided with copies of the following exhibits: Johnson's property damage (Exhibit 1), medical records (Exhibit 3), medical bills (Exhibit 4) and lost wage documentation (Exhibit 5) as well as photographs of the damage to Johnson's vehicle. The jury was also *Page 9 
provided with photographs of Johnson's vehicle after the accident, demonstrating that this was a low-impact collision with minimal damage to Johnson's vehicle.
 {¶ 19} Specifically regarding Johnson's medical records, we note that the emergency room report contained negligible objective evidence of injury or pain. The report provided that Johnson "wants checked out" after being "rear-ended by another vehicle . . . causing minimal damage to his car" and that he was "ambulatory here in the emergency department with normal gait." The report also referenced Johnson's medical history of a hernia repair two months prior to the accident.
 {¶ 20} The emergency room report also stated, in relevant part, as follows: "head is atraumatic . . . there is no tenderness to palpation of the scalp . . . there is no C-spine tenderness palpable. There is some stiffness noted and tenderness to the left paravertebral muscles with no rigidity, no meningeal signs, no anterior cervical lymphadenopathy noted." Additionally, the emergency room physician did not order x-rays of Johnson's neck.
 {¶ 21} Johnson's medical records also included a "progress note" corresponding to his September 10, 2005 office visit with Dr. Voegele. This note reveals that Johnson was complaining of neck pain "after a motor vehicle accident from 1 ½ weeks ago" and "abdominal pain that seems to have been over the same period of time." In his note Dr. Voegele diagnoses Johnson's "abdominal pain that could be a muscular strain" first, followed by the diagnosis of a "cervical strain." *Page 10 
Dr. Voegele's note did not note any muscle spasm. Additionally, we note that Dr. Voegele's progress note was addressed by Dr. Kremer in his deposition wherein Kremer admits that when listing diagnoses, it is normal for doctors to put them in the order of most significance.
 {¶ 22} Johnson's medical records also included an evaluation of the cervical spine x-rays ordered by Dr. Kremer as reviewed by radiologist Donald Miller, M.D. Dr. Miller's September 21, 2005 report provides, in relevant part, that "[t]he views of the cervical spine show normal alignments on the lateral projection . . . no anterior soft tissue swelling is seen . . . no prevertebral soft tissue swelling is noted."
 {¶ 23} Taken together, the medical records (including Johnson's physical therapy reports) reveal that despite the testimony offered by Johnson that he suffered severe pain after the accident; he was fully recovered within three months of the accident.
 {¶ 24} As Pierce admitted liability for causing the accident at issue in the present case, the central issue for the jury to decide was whether Johnson sustained any injury in the accident, thus entitling him to damages for his medical expenses, lost wages, and pain and suffering. After reviewing the testimony and evidence presented, the jury returned a verdict in an amount that equaled Johnson's unpaid property damage claim. Thus, it seems evident that the jury determined that Johnson did not sustain any injuries as a result of the accident. *Page 11 
 {¶ 25} Based on the foregoing, we can only conclude that the jury's verdict awarding Johnson $745.24 in damages was supported by sufficient, competent, credible evidence. As a result, we find that the judgment is not against the weight of the evidence and that the trial court did not abuse its discretion in denying Johnson's motion for a new trial that was generally premised on an alleged inadequacy of compensation for damages. Accordingly, Johnson's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 IN THE ALTERNATIVE, THE TRIAL COURT'S CONDITIONAL AWARD OF ADDITUR IN THE SUM OF $157.14 WAS ERROR, BEING INADEQUATE AS TO ALL FOUR (4) ELEMENTS OF DAMAGE PRESENTED BY APPELLANT.
 {¶ 26} In his second assignment of error, Johnson alleges that the trial court's additur in the amount of $157.14 is inadequate.
 {¶ 27} We note that Johnson is not objecting to the receipt of the additional amount ordered by the trial court in its March 20, 2007 Journal Entry. Additionally, we note that Johnson's argument in support of his second assignment of error again relates to the adequacy of the damage award rendered by the jury, the manifest weight of the evidence, and Johnson's motion for a new trial. Consequently, based on our disposition of Johnson's first assignment or error, Johnson's second assignment of error is also overruled. *Page 12 
 {¶ 28} Based on the foregoing, the March 20, 2007 Journal Entry of the Court of Common Pleas of Union County, Ohio awarding judgment against Pierce and in favor of Johnson in the amount of $902.38 is affirmed.
Judgment Affirmed.
 ROGERS, P.J. and PRESTON, J., concur. *Page 1