## SHINKMAN v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 9786. Decided July 2, 1929

H. H. Finkle and Herman Kohen, both of Cleveland, for Shinkman.

Ray T. Miller, Pros. Atty., Cleveland, for State.

Judges KUNKLE, ALLREAD and HORNBECK (2nd Dist) sitting

THE FACTS ARE STATED IN THE OPINION

HORNBECK, J.

The petition in error sets forth six specific grounds, some of which contain numerous sub-headings.

The first is that the Court erred in submitting to the jury for its consideration, certain testimonies which the State claimed to be a dying declaration and erred in this respect because:

(a) There was no competent preliminary proof to show that the deceased, Phillip (Funnyface) Corry had abandoned all hope of recovery at the time of the declaration.

(b) It permitted Lieutenant Story, police lieutenant of the City of Cleveland, to testify that in his opinion the declarant was conscious at the time the statement was made.

(c) Nowhere in the dying declaration is the name of the defendant, Mike Shinkman, mentioned as the man who did the shooting.

(a) The evidence discloses that the shot which entered the body of Phillip Corry was a mortal wound, striking him in the abdomen, taking a course through and across the spine, perforating the bowel in five places; that profuse hemmorrhage followed the shooting immediately and continued until death. That Corry was in great pain and agony; that his condition grew steadily worse from the time of the shooting until his death, and that he lived but approximately one hour after he was shot. The two doctors who attended him at the East 55th Street Hospital were conscious of his desperate condition and discussed it in his presence and hearing, and one of them, the younger doctor, was very definitely of the opinion that he did not have strength enough to withstand the further shock of an operation.

A very short time before the dying declaration was given, the temporary bandage which had covered the wound was displaced and an unusually heavy flow of blood ensued, all of which must have been known to Corry. These attending circumstances showing the dire condition of Corry, and the almost certain approach of death, very reasonably would have put

him in a state of mind to appreciate that he would die, that death was imminent and that there was no hope of recovery. These facts, in connection with the express question which Lieutenant Story put to him in a preliminary way, "Do you believe you are going to die now?" and his affirmative answer thereto form the bases, in our judgment, upon which in law the court was justified in saying that Corry appreciated the elements which are necessary to a dying declaration.

(b) The testimony of Lieutenant Story that in his opinion Corry was conscious at the time he made the statement just mentioned, was proper because a state of consciousness is of such common knowledge and observation that lay witnesses are regularly permitted to express their opinion touching this subject matter.

(c) The record very definitely establishes that Mike Shinkman had from early boyhood carried the nickname of "Mike the Pipe" and that he was so known by his associates and by those with whom he was acquainted. His own testimony is to the effect that he knew Corry for at least a year and a half before the shooting. So that the connection between "Mike the Pipe" and Mike Shinkman was so logical that it was altogehter proper for the jury to be permitted to draw the inference, if it felt that it was warranted, that when Corry replied to a question if Mike the Pipe shot him, and he answered in the affirmative, that he meant to say that Mike Shinkman shot him.

The second ground of error is that the court erred in submitting to the jury for its consideration the proof of a certain telephone conversation, claimed to have been overheard by the brother of the deceased and had with the defendant, by which conversation the prosecution was able to introduce certain damaging testimony which tended to support the elements of murder in the second degree.

It appears from the record on page 25 that the witness, Bernard Corry, did identify the voice of Mike Shinkman as that which he heard over the phone at the time of the conversation in question. The sufficiency of this identification in the light of the witness' limited knowledge of the voice of Mike Shinkman, could properly have been tested on cross-examination and was for the jury.

The third ground of error is that the court erred in refusing to submit to the jury the following proof offered by the defendant:

(a) Testimony of witness, Dr. Peskind, to the effect that he had conversed with Lieutenant Story immediately after the dying declaration was supposed to have been made, in which conversation Lieutenant Story is reported to have said in answer to the witness' question that he had talked to the deceased, Phillip Corry, that he "had been unable to get anything out of him."

(b) That it ordered the entire cross-examination of Clarice Corry, wife of the deceased, to be stricken from the record and taken from the consideration of the jury.

(c) That it refused to permit numerous witnesses to testimy to the bad character and reputation of the deceased Philip Corry.

(a) The direct evidence in this record connecting the defendant with the act of shooting Corry is very meager indeed. No one saw him shoot Corry, no one saw him in possession of a revolver, at the time of or after the shooting, and there is no testimony of any menacing attitude toward Corry. He is not placed nearer Corry than eighteen feet though the Coroner testified that the shot which killed Corry must have been fired at a distance from him of from four to five feet.

Inasmuch as the basis for the declarations had been established, to the extent that the court was required to submit them to the jury under proper instructions, there was left for the jury in connection therewith, the questions: Were the statements made by Corry, and if made, were they true? We believe the record fairly establishes, according to Lieutenant Story's own testimony, that he was alone with Corry for the last few minutes prior to his death, and that he and Dr. Peskind were the only persons in the room at the moment of the death of Corry. It was the contention of the defense that the declarations were never made, and it relied upon many circumstances which have probative value to support the contention. Then, if in addition to the circumstances, some of which tended to show that the declarations were not made, it appears that Lieutenant Story at the very time that Corry died, said in response to a question by Dr. Peskind, "Did you get anything out of this man?" that he refused to answer any questions and said, "I did not get anything out of him," it clearly shows, if the jury believed it, a statement out of court contrary to that made in court, and of considerable weight on the question whether the declarations were made at all.

(1) According to the record the trial court refused to accept this evidence because Dr. Peskind could not identify the man who made the statement to him.

(2) If the record did not conclusively establish that Lieutenant Story was the man in the room with Corry, to whom Dr. Peskind directed his inquiry, then inasmuch as the evidence tends to show that the Lieutenant was there, it became a question for the jury to say whether or not he was the man to whom the question was directed and if so, if he answered as would have been testified by Dr. Peskind.

(3) This was impeaching testimony and the foundation for the questions had not been laid by first making proper inquiry of Lieutenant Story whether or not the conversation claimed by defendants had occurred, and before Dr. Peskind's testimony was taken Lieutenant Story should have been called and so interrogated. Thus, the reception of this evidence became purely a question of procedure. This testimony was so vital to the defense that

we believe in the interest of justice and the fair opportunity to present all the proper evidence it is our obligation to make it possible that its weight be passed upon by a jury.

(4) Lieutenant Story ~~'d that Corry answered his question "Do you believe you are going to die now" by a nod of the head, a movement of the lips and an attempt to speak, indicating the answer, "yes," and that he made like affirmative answer to the query "Is it true that Mike the Pipe shot you?" Objection was made to the use of the motions of the head and particularly to the ruling of the court permitting Lieutenant Story to draw the conclusion that Corry framed with his lips the words "yes" and "no."

The ruling of the court was correct. Obviously communication cannot be restricted to the audible spoken word. Any means or method of transmitting intelligently the message sought to be conveyed from one mind to another meets the test of the law. In conjunction with the opinion of Story that the witness indicated "yes" both by nod and by the lips, he illustrated the movement of the head and the lips so that the jury had the basis of his opinion and to permit him to draw his conclusions was a proper and well recognized form of procedure.

(b) Some of the questions propounded to Clarice Corry, and the answers thereto, developed in the cross-examination, were competent, but, inasmuch as she was thereafter put on the stand by the defense in chief and permitted to answer such questions, no prejudice resulted to defendant.

(c) The court properly refused to permit testimony touching the general reputation of Corry and also relating to his reputation for peace and quiet. Neither of these elements were involved.

The court freely permitted questions to be put and answers made concerning the reputation of Corry for truth and veracity. Inasmuch as the defense here was a denial of the shooting and not self-defense, the only relation of the reputation of Cory to the case was with respect to his declarations whether or not true, if made, and this touched only his credibility.

The fourth ground of error is that the court was guilty of error in judgment because:

(a) It refused to submit to the jury separate charges, 1, 2, 3, 4, 5, 6, 7, 8, 9 before argument, as it was required to do by law, and because

(a-1) These charges were and are the law of the land and were not covered by the court in its general charge to the jury.

The court was not required in this case, which is a criminal action, to give special charges at the request of counsel before argument (**Wertenberger vs. State, 99 OS. 353**), and we do not find that the defendant was prejudiced by the failure to incorporate such parts of the charges tendered as were proper in the general charge.

The sixth ground of error is that the court committed another error of judg-

ment when it submitted to the jury the crime of murder in the second degree because

(a) It permitted the jury to consider the testimony of a witness who had repeatedly contradicted himself and without whose testimony the State was unable to prove the crime of murder in the second degree, the testimony referred to being the testimony of Bernard Corry, brother of the deceased.

The fact that a witness may have repeatedly contradicted himself would not authorize nor justify the court in withdrawing his testimony from the jury. To do so would be highly improper and clearly prejudicial. All contradictions of a witness go to his credibility and are peculiarly for the determination of the jury. Counsel seem to labor under a misapprehension that, without the testimony of certain witnesses other than Lieutenant Story, the elements of murder in the second degree were not established and that the court erred, in view of their evidence, in submitting the guilt or innocence of the defendant of murder in the second degree, to the jury.

It is the law. that if the killing be proved or admitted, a presumption arises therefrom of guilt of murder in the second degree. If the jury from the circumstances in evidence and the dying declarations were satisfied by the necessary degree of proof that the defendant shot Corry, then, that state of proof standing alone would have been sufficient to have warranted a verdict of guilty of murder in the second degree, unless circumstances of extenuation or justification appeared from the record in its entirety, State vs. Tuner, Wrights Rep. 20.

Inasmuch as this case must be tried again, we deem it advisable to make comment on certain lines of testimony appearing in the record and the competency thereof.

The evidence fairly discloses that Corry was in a state of shock from the time he was wounded and especially during the period that he was in the hospital, and until his death. The dying declarations were made within three minutes of his death. The defense sought to show that in view of his desperate physical condition it was probable that he was unconscious at the time when Lieutenant Story stated that he received the declarations. The record at pages 8, 9 and 10 shows a line of questions tending to elicit opinion on that subject. Some of these inquiries may have been improper, but in our judgment, others should have been permitted to be answered. For instance, this question directed to Dr. Pearse: "Doctor, if Philip Corry, the deceased, was shot as you have already described, and was taken into a hospital at about 1:15 and then declared in shock as he entered the hospital, would you say that from your experience and from what you know of the wounds that Philip Corry died of, that he would fall into a state of unconsciousness prior to death?" To this objection was made and

sustained. Although exception was taken the record does not show what the answer would have been. And these questions: "You stated doctor, that Philip Corry died of hemorrhage and shock. "Answer: Yes, as a result of the gunshot wound." Q. "Would you say doctor that he had lapsed into unconsciousness prior to death?" Objection to this question was sustained. "Q. Could you tell doctor, whether or not from your description of the wound and the causes of his death, as you have so described and testified, that Phillip Corry had been in a state of unconsciousness prior to his death?" This question was not permitted to be answered.

The defense is entitled to ask of medical witnesses upon proper hypotheses their opinion whether or not Corry was unconscious prior to his death, and if so, for how long a period of time.

This case was well tried. The trial judge handled the many questions presented in a careful and capable manner. The statement of Dr. B. Peskind relating his conversation with the man in the room with Corry when he died, should have been submitted to the jury, in the manner heretofore indicated, its weight and the credibility of the witness tested, because of its bearing on the outstanding event in the case, viz: the testimony of Lieutenant Story detailing the dying declarations of Corry.

But for a nice application of the rules of trial procedure there could have been no doubt of the admissibility of this evidence.

Technicalities of the law are being swept away in the administration of criminal justice, especially those which have heretofore been invoked against the State.

In this case like consideration is due the defendant.

Therefore, the judgment of the trial court must be reversed and the cause remanded for a new trial.

Kunkle, PJ, and Allread, J, concur.