OPINION
{¶ 1} Plaintiffs-Appellants Pok Cha Wood, ("Mrs. Wood"), Donald Wood ("Mr. Wood"), and their minor children appeal from the February 7, 2006 judgment of the Court of Common Pleas of Hancock County, Ohio, denying their Motion for a New Trial and Motion to Extend Discovery and Compel Answers to Requests for Admissions.
 {¶ 2} This case arises out of an automobile accident that occurred on November 3, 2001 in Findlay, Hancock County, Ohio. Mrs. Wood was the passenger in a Chevrolet Monte Carlo driven by Mr. Wood when their automobile was struck from behind by a Ford Mustang, driven by Appellee, Lisa Gutierrez ("Gutierrez"). Gutierrez admitted negligence in the accident; however, she contested the nature and extent of the Woods' injuries and what compensation they were entitled to as a result of the accident. The matter proceeded to a jury trial commencing May 23, 2005.
 {¶ 3} During the four day trial, extensive testimony was presented regarding Mrs. Wood's injuries, treatment, and subsequent diagnosis of Chronic Regional Pain Syndrome ("CRPS"). Mrs. Wood's treating physicians, internist Dr. Daniel Berry and neurologist Dr. William Bauer concluded that she suffered from CRPS, and Dr. Bauer offered his opinion that Mrs. Wood's CRPS was caused by the automobile accident. Gutierrez's expert physician, neurologist Dr. Gerald Steiman ("Steiman") disagreed with the opinions of Drs. Berry and Bauer and testified that Mrs. Wood did not suffer from CRPS, but rather suffered from cellulitis or a superficial venous problem that was not healing due to a lack of blood flow. Steiman also offered his opinion that these conditions were in no way related to the automobile accident.
 {¶ 4} Although numerous witnesses testified on behalf of both parties, only Steiman's testimony is at issue in the present appeal. Specifically at issue is whether an alleged inaccuracy on Steiman's curriculum vitae ("C.V.") representing that he was a "Fellow" of the American Academy of Neurology ("A.A.N.") merits a new trial.
 {¶ 5} At the close of Appellants' case, the court entered a directed verdict for Gutierrez and against Mr. Wood for his personal injury claim. On May 26, 2005 the jury returned a general verdict awarding $8,000.00 in damages to Mrs. Wood for her personal injury claim and $2,000.00 in damages to Mr. Wood and their children for their consortium claims.
 {¶ 6} On June 7, 2005 the Woods filed a Motion for New Trial and on June 24, 2005 they filed a Motion to Extend Discovery and Compel Answers to Requests for Admission. On February 7, 2006 the trial court entered judgment and denied the Motion for New Trial and the Motion to Extend Discovery and to Compel Answers to Requests for Admission.
 {¶ 7} The Woods now appeal, asserting one assignment of error.
 ASSIGNMENT OF ERROR Appellee's expert witness inflated his credentials andperjured himself at trial by testifying that he had been a Fellowof the American Academy of Neurology, when, in fact, he had neverheld that title. The Supreme Ohio Court [sic] has held thatmisleading testimony by an expert witness is sufficient towarrant the granting of a new trial. Here, the trial court erredin denying Appellants' motion for a new trial when Appellantspresented newly discovered evidence that Appellee's expertperjured himself at trial with respect to his credentials.
 {¶ 8} In their sole assignment of error, Appellants contend that the trial court abused its discretion when it denied their motion for a new trial based upon the misleading testimony of Appellee's expert witness, Dr. Gerald Steiman, and newly discovered evidence regarding said expert.
 {¶ 9} A reviewing court can only reverse a trial court's order denying a motion for a new trial upon a finding of an abuse of discretion. Bellman v. Ford Motor Co. 3rd Dist. No. 12-04-11, 2005-Ohio-2777. Furthermore, a ruling concerning the admission of expert testimony is within the broad discretion of the trial court and also will not be disturbed absent an abuse of discretion. Scott v. Yates (1994), 71 Ohio St.3d 219, 221,643 N.E.2d 105. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court.Id.
 {¶ 10} Although Appellants assert only one assignment of error, they present several arguments in support of their contention that the trial court abused its discretion in denying their motion for a new trial. Therefore, we shall address these arguments within the context of our discussion and review.
 I. Fraud Upon the Court. Civ.R. 60(B)(3) {¶ 11} First, Appellants argue that Steiman's inflation of his credentials constitutes a fraud upon the court requiring a new trial. We note that although Appellants' Motion for a New Trial was filed pursuant to Civ.R. 59, it is apparent they are now attempting to argue "fraud" and invoke Civ.R. 60(B) as a basis for a new trial. A party's failure to raise an issue at the trial court level acts as a waiver of the issue on appeal. Stateex rel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276, 278,611 N.E.2d 830 citing State ex rel. Gibson v. Indus. Comm.
(1988), 39 Ohio St.3d 319, 530 N.E.2d 916. Furthermore, a party receiving an adverse judgment in the trial court may not expand his or her claims in the court of appeals to maximize his or her chances or reversal or remand. Shumaker v. Ohio Dept. of HumanServ. (1996), 117 Ohio App.3d 730, 736, 691 N.E.2d 690.
 {¶ 12} However, we note that the trial court clearly addressed the impact of Steiman's alleged inaccuracy regarding his status as a "Fellow" within the context of the entire trial, and therefore we shall address the "fraud" argument.
 {¶ 13} Civ.R. 60(B) provides, in relevant part, as follows:
On motion and upon such terms as are just, the court mayrelieve a party or his legal representative from a finaljudgment, order or proceeding for the following reasons: (3)fraud (whether heretofore denominated intrinsic or extrinsic),misrepresentation or other misconduct of an adverse party;
By its plain terms, this rule applies only when an adverse party, not an adverse witness, testifies falsely. Seibert v.Murphy 4th Dist. No. 02CA2825, 2002-Ohio-6454. Therefore, Appellants are not entitled to a new trial simply based upon an alleged fraud upon the court committed by an expert witness and not the Appellee.
 {¶ 14} Furthermore, even assuming that Civ.R. 60(B)(3) applies to grant relief from judgment based upon the fraud or false testimony of a non-party, Appellant must be able to demonstrate that without the false testimony, the result of the trial might have been different "and that the party seeking relief was taken by surprise when false testimony was given and was unable to meet it or did not know if its falsity until after the trial." Seibert, at par. 34 citing Abrahamsen v.Trans-State Exp., Inc. (C.A.6, 1996), 92 F.3d 425, 428 andGoldshot v. Goldshot 2nd Dist. No. 19000, 2002-Ohio-2056.
 {¶ 15} In the present case, Steiman's C.V. states that he is a Fellow of the A.A.N. However, the morning Steiman was to testify, Appellants' counsel received a faxed letter from the general counsel for the A.A.N. stating that Steiman was not a Fellow of the A.A.N and was instead classified as an Active Member of the Academy. Following direct testimony and prior to cross-examination of Steiman, extensive discussion occurred between counsel for the parties and the court regarding the possibility that Steiman's C.V. was inaccurate. As a result, the court permitted Appellants' counsel to cross-examine and recross-examine Steiman on the correspondence from the A.A.N. and whether he was a Fellow of the A.A.N. During cross-examination, the following exchanges occurred:
Q: You were [sic] not currently a Fellow of the AmericanAcademy of Neurology, are you?
 A: I believe I am, I maybe have dues in arrear but I believe Iam a Fellow, I probably have dues in arrear but.
 Q: You believe you are?
 A: Yeah. I may have dues in arrear but I believe, I have myfellowship certification here, but other than that, I believe Iam. (Tr. p. 481).
* * *
Q: Doctor, you are under oath, you know that you are not aFellow?
 A: According to this definition I am not a Fellow. I would bean Active Member.
 Q: That's right. But you hold yourself out on your letterheadof your curriculum vitae as being a Fellow?
 A: Correct. (Tr. p. 483).
* * *
A: . . . When I became a Member of the Academy, and this is 30years ago, I was a Fellow, subsequent to that they made a newclassification and that is people who are Fellows became Membersand you had to be elected to a Fellow, so technically now I am aMember but when I became a, when you were first approved 25 yearsago, you became a Fellow, then you became Members and you had tobe elected to a Fellow, so that's the difficulty, that's thedifference. But I am not, as pointed out today, I would not be aFellow I would be a Member. When I joined I was a Fellow.
 Q: Do I understand you correctly, doctor, that you knew whenyou sat down in that chair before your direct examination thatyou were not a Fellow of the Academy?
 A: No, in fact until you pointed that out I never even paid itany mind. I really didn't pay it any mind. I have had this on myCV since I started out . . .
Q: Maybe I didn't understand your explanation, you said thatyou were made a Fellow, apparently you weren't elected you said,am I correct that now you have to be elected?
 A: Yes.
 Q: Didn't you know that you were not elected?
 A: No, you see when I joined you became a Fellow. Then at sometime later it was decided you had to be elected to become aFellow.
 Q: Doctor, didn't you say a moment ago there was a backpayment issue earlier?
 A: If I was not, I haven't paid dues in probably about twoyears, so that could be a problem that is, but, when I joined theAcademy you join as a Fellow. Sometime later you had to become,you were made, all the Fellows apparently were made ActiveMembers and to become a Fellow you had to be appointed. Now,that's the only thing I can say, so I was a Fellow and apparentlyI am not a Fellow today.
 Q: Is your answer that you are not a Fellow, that you don'tbelieve that you are a Fellow now because of a nonpayment issueor because you weren't elected as members?
 A: I am sorry, to clear that up for you, I have not beenelected. My Fellow membership has been degraded to an ActiveMember membership. So I am no longer a Fellow according to thesenew definitions, and I have to change my letterhead so he pointedthat out to me. I used to be a Fellow and some time I becameun-Fellowed. So now I am Membered not Fellowed. (Tr. pp.506-508).
On redirect, the following exchange occurred:
Q: Just to clear up this fellowship issue, when you became amember of the Academy were you a Fellow, were you a Member, whatwere you?
 A: When you first became you were elected, you joined, youbecame a Fellow.
 Q: When was the first time you ever found out that you weren'ta Fellow?
 A: Apparently today when they showed me this. At some timethey said you became a member. (Tr. p. 522).
 {¶ 16} We note that Appellants have not alleged that Steiman's questioned status as a "Fellow" versus an "active member" of the A.A.N. disqualifies him from testifying as an expert. Appellants simply contend that Steiman's false testimony was critical to the jury's determination of damages and argue that had the jury known that Steiman had misrepresented his C.V. and continued to misrepresent his credentials under oath, they would have come to the conclusion that he was not credible as to the nature and extent of Mrs. Wood's injuries.
 {¶ 17} However, we find that Appellants are not able to demonstrate that without the false testimony, the result of the trial might have been different. The extensive medical records presented in this case and the testimony of multiple parties, including Mrs. Woods' treating physicians and other expert witnesses, supported the verdict reached by the jury and thus a new trial could not change the result. In particular, we note the testimony of Dr. Goel, Dr. Berry, Dr. Bauer, Mr. Tanner, and Dr. Steiman.
 Testimony of Dr. Vijay Goel {¶ 18} Appellants presented the expert testimony of Dr. Vijay Goel, ("Goel") a professor of bioengineering at the University of Toledo and a professor and co-director of the Spinal Research Center at the Medical College of Ohio. Goel testified as a medical consultant regarding whether or not the forces in the automobile accident Mrs. Wood was involved in were sufficient enough to cause injury to her spine. (Tr. p. 34). Goel opined that Mrs. Wood suffered from whiplash which could cause sufficient injuries that can lead to chronic pain. (Tr. p. 34). However, Goel also confirmed that Mrs. Wood suffered from the preexisting conditions of osteoporosis and osteophytes, a bone growth causing the spinal canal to be reduced, both of which may have predisposed her to injury at a low impact speed. (Tr. p. 36).
 {¶ 19} On cross-examination Goel testified that he created a report regarding his opinion on Mrs. Wood's injuries on January 2, 2005. (Tr. p. 44). Goel also testified that in his report, one of the items listed as a factor in Mrs. Wood's pain or injury is low versus high impact loads, or G forces. (Tr. p. 44). However, Goel conceded that he did not know what type of bumpers were involved in this accident, that he did not do an analysis of the absorption properties of the bumpers, and that he did not know the size of the vehicles involved in this accident when he submitted his report. (Tr. pp. 45-48). Goel also conceded that he did not do an independent analysis of the speed involved in this accident and had no idea of the amount of damage in this accident. (Tr. p. 49, 52). Although Goel opined that the amount of damage to the vehicles has no correlation with the force coming on the neck of the person and the pain he or she may then suffer, he admitted that he never made an analysis of the forces involved in this accident at all. (Tr. pp. 52-53).
 Testimony of Dr. Daniel Berry {¶ 20} Appellants also presented the video deposition testimony of Dr. Daniel Berry ("Berry"), an internal medicine physician who first treated Mrs. Wood in July of 2003, approximately 19 months after the accident. (Dep. p. 9). Berry testified that he first noted that Mrs. Wood suffered from edema, or swelling in the lower leg on January 7, 2004. (Dep. p. 18). Berry also testified that after a lengthy work-up, the only cause he could find that would explain the chronic edema in Mrs. Wood's leg was CRPS. (Dep. pp. 19-21). Berry opined that the relatively minor trauma Mrs. Wood sustained in the automobile accident was responsible for the CRPS. (Dep. pp. 21-22). Berry also opined that the majority of problems he has treated Mrs. Wood for are due to her CRPS. (Dep. p. 32).
 {¶ 21} On cross-examination Berry noted that CRPS could develop from trauma to the spine, but that it can also be caused by trauma due to a surgery or an invasive type surgery. (Dep. Part II, p. 22). Berry agreed that a bone scan of Mrs. Wood taken on November 30, 2001 revealed that she had an age indeterminate compression fracture in her spine which was not related to the auto accident. (Dep. Part II, pp. 36-37). He also agreed that a January 12, 2002 MRI showed that Mrs. Wood suffered from degenerative conditions in her vertebrae and spinal canal stenosis, a narrowing of the spinal cord area, prior to the accident. (Dep. Part II, pp. 39-42).
 {¶ 22} Moreover, Berry agreed that Mrs. Wood fell on February 23, 2003 and went to the emergency room, complaining of pain to her right hip. (Dep. Part II, p. 43). Berry admitted that this fall preceded her diagnosis of CRPS in January of 2004. (Dep. Part II, p. 44). Additionally, Berry testified that Mrs. Wood underwent a laparoscopy procedure on August 15, 2003 and suffered drainage from that site on August 19, 2003. (Dep. Part II, pp. 47-48). Berry also testified that Mrs. Wood had a colonoscopy taken on August 4, 2003 and an EGD procedure done on December 16, 2003, both of which were unrelated to the automobile accident but are considered invasive procedures. (Dep. Part II, pp. 54-55). Berry conceded that it was not until after all of the abdominal procedures and other treatments occurred that Mrs. Wood was diagnosed with CRPS. (Dep. Part II, p. 55). Berry also conceded that Mrs. Wood was still having drainage from her laparoscopy site in March of 2004 and that this drainage became infected. (Dep. Part II, p. 58).
 {¶ 23} On redirect Berry admitted that he does not have enough experience with CRPS to say that people get CRPS from motor vehicle accidents and that he has only seen ten cases of it in eight years of medical practice. (Dep. Part II, p. 71). He also admitted that Mrs. Wood's pre-existing conditions of osteoporosis, stenosis, and other degenerative changes would make her more susceptible to injuries in a rear-end collision. (Dep. Part II, pp. 77-78). Furthermore, Berry admitted that Mrs. Wood's fall on February 23, 2003, which was closer in time to her diagnosis of CRPS than the automobile accident, could absolutely be responsible for her CRPS. (Dep. Part II, p. 79). Finally, when asked if the automobile accident is what "probably triggered" the CRPS, Berry responded:
"In light of the fall, I don't know. I would say for sure ithas aggravated back pain and caused back pain that's gone on forsome time. But what is clear is that it does not appear that theRSD[1] occurred, or that the signs of RSD, including edema,until approximately two years later, and she had had anintervening fall that could also explain it. So I'm not sure thatI can still say, with a reasonable degree of medical certainty,51 percent, that that was the cause. Certainly something's causedit and I don't know that I feel comfortable saying that that wasthe cause, especially if you have another inciting event thatcould be the cause." (Dep. Part II, pp. 81-82).
 Testimony of Dr. William Bauer {¶ 24} Finally, Appellants presented the testimony of Dr. William Bauer ("Bauer"), a neurologist who has treated Mrs. Wood since April 15, 2002. (Tr. p. 100). Bauer testified that Mrs. Wood suffered an extension flex injury as a result of the automobile accident, and that the pain in her neck and back was directly and causally related to the automobile accident. (Tr. p. 104, 110). Bauer also agreed that Mrs. Wood was predisposed to injury because of her small canal, osteopenia, and osteophytes. (Tr. p. 113). Bauer testified that he diagnosed Mrs. Wood with RSD in September or November of 2003 after exhibiting several symptoms consistent with RSD. (Tr. p. 135). Bauer opined that the injury Mrs. Wood suffered in the automobile accident preceded and set her up for CRPS. (Tr. p. 136). He also opined that the automobile accident and the neuropathic pain that Mrs. Wood suffered from was the mechanism by which the CRPS or RSD developed. (Tr. p. 144). However, Bauer also admitted that Mrs. Wood's fall on February 23, 2003 could be a potential cause of RSD. (Tr. pp. 138-139).
 {¶ 25} On cross-examination Bauer admitted that RSD or CRPS can be somewhat of a controversial diagnosis and that it can be caused due to trauma due to invasive procedures such as surgeries. (Tr. pp. 155-156). Bauer also agreed that Mrs. Wood was suffering from an infection at her laparoscopy incision site approximately seven months after that surgery and that this infection was occurring at the same time he first diagnosed RSD. (Tr. p. 179).
 Testimony of C. Brian Tanner {¶ 26} Appellee presented the testimony of C. Brian Tanner ("Tanner"), a professional mechanical engineer who performed an analysis of the automobile accident to determine the severity of impact and the forces that impact would impart to the occupants in the automobiles involved. (Tr. p. 371). Tanner testified that there was no damage to Appellee's automobile and no damage to Mr. and Mrs. Wood's automobile as a result of the accident. (Tr. pp. 375-376). Tanner opined that Appellee was traveling no faster than five miles per hour when the accident occurred. (Tr. p. 377). Tanner also opined that the G force experienced by Mr. and Mrs. Wood was no greater than 1.5 G's, an amount equal to planting your foot as you are walking or sitting down in a chair. (Tr. pp. 378-379).
 {¶ 27} Additionally, Tanner testified that he disagreed with Dr. Goel's report because Goel drew conclusions about the likelihood of injury without ever considering the severity of the impact. (Tr. p. 381). Tanner stated that Goel did not do an analysis of the size of the vehicles which is crucial to calculate the severity of the impact. (Tr. p. 383). Tanner concluded that the forces involved in this accident were not sufficient to cause Mrs. Wood's claimed injuries. (Tr. pp. 384-385).
 {¶ 28} On cross-examination Tanner agreed that the statements made by Goel regarding accidents in general were generally accurate, but that some of the conclusions he made about the specifics of this accident were probably not accurate. (Tr. p. 388).
 Testimony of Dr. Gerald Steiman {¶ 29} Finally, Appellee presented the testimony of Dr. Gerald Steiman regarding his independent medical examination and pain assessment of Mrs. Wood. Steiman testified that he has written an article about RSD that has been accepted for publication and has also given lectures on RSD. (Tr. pp. 415-416).
 {¶ 30} Steiman agreed that Mrs. Wood suffered a cervical lumbar sprain/strain as a result of the accident, but testified that the degenerative disc osteophyte problem Mrs. Wood suffers from can also cause pain, stiffness, and spasms. (Tr. p. 419, 433). Steiman disagreed with Bauer's administration of intrathecal injections as treatment for Mrs. Wood's back pain due to the short duration of pain control and the risk of placing a needle directly in the thecal sac of the spinal cord. (Tr. pp. 440-441).
 {¶ 31} Steiman testified that although he has seen over a hundred people with questions of RSD, he has treated only 10 to 12 true cases of RSD as it is an unusual diagnosis. (Tr. p. 446). He agreed that RSD is caused by trauma but stated that the typical injury causing RSD is a "crush injury." (Tr. p. 446). Steiman opined that Mrs. Wood has never suffered from CRPS and opined that her condition is really a cellulitis which has become a chronic situation. (Tr. p. 455).
 {¶ 32} Steiman also testified that the triple phase bone scan performed on Mrs. Wood on August 31, 2004 can show signs of CRPS or RSD, but in Mrs. Wood's case it did not, rather it simply indicated the cellulitis. (Tr. p. 451). Additionally, Steiman opined that Mrs. Wood's cellulitis was also not caused by the accident.
 {¶ 33} Even though a court may admit expert evidence, finding that it meets the threshold for reliability, the jury remains free to reject such evidence for any reason, including reasons of unreliability, incredulity, or clarity. Terry v. Ottawa Cty. Bd.Of Mental Retardation Developmental Delay, 6th Dist. No. OT-05-009, 2006-Ohio-866 citing State v. Williams (1983),4 Ohio St.3d 53, 446 N.E.2d 444. The fact that a witness may have repeatedly contradicted himself does not justify the court in withdrawing his testimony from the jury. Shinkman v. State
(1929), 7 Ohio Law Abs. 518. The contradictions of a witness reflect his credibility and are for consideration by the jury.Id.
 {¶ 34} The credibility of witnesses is for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Credibility is always an issue, whether impeached or not, and it is for the fact finder to impartially determine if a witness is credible and the amount of weight to be afforded to that particular witness' testimony.State v. Bayer (1995), 102 Ohio App.3d 172, 182,656 N.E.2d 1314. The jury may believe or disbelieve any witness. State v.Viola (1947), 51 Ohio Law Abs. 577, 82 N.E.2d 306.
 {¶ 35} Based upon the substantial medical records and testimony presented during trial, coupled with the extensive examination and cross-examination of Steiman regarding his credentials, we find it highly unlikely that the sole basis for the jury's verdict was Steiman's classification on his C.V. In fact, we note that Appellants' own expert witness, Dr. Berry, was unable to state with a reasonable degree of medical certainty that the automobile accident caused Mrs. Wood's CRPS.
 {¶ 36} Furthermore, there is no question that the issue regarding Steiman's membership status within the A.A.N. did not present prejudicial surprise to Appellants. Appellants' counsel received the faxed letter from the A.A.N. concerning Steiman's status as a "Fellow" prior to cross-examination and brought this matter to the attention of the court. As a result, the court permitted Appellants to cross-examine and recross-examine Steiman extensively about this issue.
 {¶ 37} For these reasons, and based upon the extensive testimony presented which supports the jury's verdict, we find that the potential inaccuracy on Steiman's C.V. was not only immaterial, but it was not a fraud upon the court, and is therefore not sufficient grounds for granting a new trial. As the trial court conducted a detailed evaluation of all of the evidence and testimony prior to reaching the same conclusion in its February 7, 2006 Judgment Entry, we do not find that the trial court abused its discretion in denying Appellants' motion for a new trial.
 II. Reasonable Diligence. Civ.R. 59(A)(8) {¶ 38} Next, Appellants argue that the exercise of reasonable diligence did not require them to investigate and confirm the accuracy of every aspect of Steiman's C.V. prior to trial. Appellants also submit that newly discovered evidence demonstrating that Steiman perjured himself with respect to his credentials constitutes material evidence that is likely to change the result if a new trial is granted.
 {¶ 39} Specifically, Appellants contend that the court erred in not granting them a new trial pursuant to Civ.R. 59(A)(8) which provides, in relevant part, as follows:
"A new trial may be granted to all or any of the parties andon all or part of the issues upon any of the following grounds:(8) Newly discovered evidence, material for the party applying,which with reasonable diligence he could not have discovered andproduced at trial;
* * *
In addition to the above grounds, a new trial may also begranted in the sound discretion of the court for good causeshown. When a new trial is granted, the court shall specify inwriting the grounds upon which such new trial is granted."
 {¶ 40} Following the conclusion of the trial, on May 31, 2005 counsel for the Appellants received a second letter from the general counsel of the A.A.N. informing them that "Steiman has never been a Fellow of the American Academy of Neurology." This court notes that Appellants are not challenging Steiman's ability to be classified as an expert witness, nor do they contend that the evidence at trial was insufficient for Steiman to be able to reach his conclusion about Mrs. Wood's medical condition. Instead, Appellants argue that Steiman would be less credible if Appellants could have submitted the second letter from the A.A.N. general counsel regarding Steiman's prior status in the A.A.N.
 {¶ 41} The granting of a new trial pursuant to Civ.R. 59(A) is a matter within the sound discretion of the trial court.Douglas Elec. Corp. v. Grace (1990), 70 Ohio App.3d 7, 16,590 N.E.2d 363. Applications for a new trial on the ground of newly discovered evidence are not favored by the courts and should always be subjected to the closest scrutiny. Taylor v. Ross
(1948), 150 Ohio St. 448, 451, 83 N.E.2d 222. The well-settled requirements for granting a new trial based upon newly discovered evidence are as follows:
"(1) The new evidence must be such as will probably change theresult if a new trial is granted, (2) it must have beendiscovered since the trial, (3) it must be such as could not inthe exercise of due diligence have been discovered before thetrial, (4) it must be material to the issues, (5) it must not bemerely cumulative to former evidence; and (6) it must not merelyimpeach or contradict the former evidence."
 Sheen v. Kubiac (1936), 131 Ohio St. 52, 58, 1 N.E.2d 943.
 {¶ 42} We find that Appellants do not meet all six of the requirements for granting a new trial based upon newly discovered evidence.
 {¶ 43} In support of the first requirement, Appellants argue that if a new trial were granted, they would have evidence showing Steiman inflated his credentials and that the jury would likely give little credence to Steiman's testimony which would then be discounted by the jury, resulting in a greater recovery for Appellants. We find this argument to be without merit and based solely on speculation. The issue of Steiman's status in the A.A.N. and his general credibility was presented to the jury during direct examination, cross-examination, and closing arguments. It was up to the jury to weigh the credibility of each witness and their corresponding testimony prior to reaching their verdict. We find it unlikely that the jury failed to pick up on the dispute concerning Steiman's classification on his C.V. and find it highly unlikely that the sole basis for their verdict was Steiman's heading on his C.V. Thus, our previous review of the evidence clearly shows that the result would not have been different had the second letter from the A.A.N. been admitted into evidence.
 {¶ 44} Regarding the third requirement, we agree with the trial court's finding that "while plaintiffs' obtained more information after the trial, it is information that could have been discovered with due diligence before the trial." Appellants' counsel clearly inquired into Steiman's status with the A.A.N. prior to trial. At the time of the initial inquiry, Appellants' counsel simply asked whether Steiman was currently a Fellow of the A.A.N. What they failed to do is ask whether Steiman had ever been a Fellow. We find that Appellants have failed to demonstrate that due diligence could not have revealed the "newly discovered" information concerning Dr. Steiman never being a Fellow of the A.A.N. prior to trial.
 {¶ 45} Additionally, we find that Appellants cannot meet the fourth requirement and find that the newly discovered evidence concerning Steiman's status in the A.A.N. is not material to the issues. The extensive medical records presented and the testimony of multiple expert witnesses was material to the issues decided by the jury. This evidence, not the classifications or titles of the witnesses, supported the jury's verdict and thus granting a new trial would not change the result.
 {¶ 46} Finally, we find that Appellants cannot meet the sixth requirement for the granting of a new trial based upon newly discovered evidence. Appellants argue that the newly discovered evidence "conclusively establishes that Steiman lied on his C.V. by inflating his credentials, and, more significantly, perjured himself on the witness stand." It is apparent that Appellants are seeking to present this evidence simply for the purpose of impeaching or contradicting the previous testimony of Steiman — precisely what the sixth requirement protects.
 {¶ 47} Therefore, we find that the trial court exercised the closest scrutiny in reviewing Appellants' Motion for a New Trial. The court's February 7, 2006 Judgment Entry clearly shows that a detailed evaluation of all of the evidence and testimony was completed by the court prior to reaching its conclusion that Appellants were not entitled to a new trial.
 {¶ 48} Based upon the foregoing, we cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably in denying Appellants' Motion for a New Trial and Motion to Extend Discovery and Compel Answers to Requests for Admissions. Therefore, Appellants' sole assignment of error is overruled and the judgment of the Court of Common Pleas of Hancock County is affirmed.
Judgment Affirmed.
 Bryant, P.J. and Cupp, J., concur.
[1] As previously distinguished by Dr. Berry in his deposition, Chronic Regional Pain Syndrome ("CRPS") previously went by the moniker Reflex Sympathetic Dystrophy ("RSD") (See Dep. p. 19). See also testimony of Dr. Gerald Steiman. (Tr. pp. 441-446).