OPINION
{¶ 1} The plaintiff/appellant/cross-appellee, Warren R. Harbison ("Harbison"), appeals the judgment of the Hardin County Common Pleas Court awarding him $9,810 on his complaint against the defendant/appellee/cross-appellant, Timothy Conover ("Conover"), for damages relating to the dissolution of a general partnership. Conover has filed a cross-appeal challenging the same judgment.
 {¶ 2} In July 2000, Harbison and Conover formed a general partnership called B.T.I. Mechanical Service ("BTI"). Primarily, BTI performed metal fabrication. Harbison created a partnership agreement, which both parties signed. The agreement specified that Harbison would make an "investment" of $10,000 to BTI, that the parties would share all profits and expenses equally, and that the parties would make joint business decisions "relating to the advancement of" BTI. The agreement also provided a buy-out option in the event either partner died. Conover's contribution of his garage, tools, knowledge, and business contacts was not included in the written agreement.
 {¶ 3} Harbison's $10,000 contribution was spent to remodel the office and to purchase a computer and other office equipment. Subsequently, Harbison made other loans to BTI, some by check and others in cash. The total amount of loans was disputed at trial, resulting in a dispute as to the unpaid balance. After a dispute on or about April 4, 2002, Harbison told Conover he wished to dissolve the partnership. At that time, the parties closed BTI's checking account, taking a cashier's check for $5,784.62. Since that time, Conover has continued to operate BTI.
 {¶ 4} In March 2003, Harbison filed a complaint against Conover and BTI in Hardin County Common Pleas Court case number 20031058CVH. After discovery, Harbison voluntarily dismissed the complaint pursuant to Civ.R. 41(A)(1). Thereafter, on December 30, 2004, Harbison re-filed the complaint, seeking judicial dissolution of the partnership; an accounting starting on June 19, 2000; an inventory and appraisal as of May 31, 2002; a public sale or one-half of the BTI's going concern value as of May 31, 2004; repayment of debts, including loans; and judgment against Conover personally for one half of the damages he caused in the business. Conover timely filed his answer, and the parties re-filed the discovery completed in the prior case. The court held a bench trial on September 26 and 27, 2005. The court heard testimony from twelve witnesses, including the parties, Harbison submitted thirteen exhibits into evidence, and Conover submitted fifteen exhibits into evidence.
 {¶ 5} In its judgment entry of January 18, 2006, the court found that the partnership was "terminated" on or about April 4, 2002; that the testimony of two expert witnesses was "of little or no value"; that Harbison's "proof is lacking as to any other cash loans made by him to the business"; that Harbison did not meet his burden of proving damages; and that Conover did not meet his burden of proving affirmative defenses. The court awarded Harbison $9,810 as repayment on one outstanding loan, "his one-half (1/2) of the net profits and losses for the 2000, 2001, and 2002 tax years", and his one-half interest in any partnership property as of April 4, 2002. On appeal, Harbison asserts the following argumentative assignments of error:
The decision appealed from is based upon facts found by thecourt against the manifest weight of the evidence, indeed in somecases directly opposed to the uncontroverted evidence received attrial and exhibits admitted into evidence without objection.
 The trial court erred in confusing the concept of dissolutionof a partnership with termination of a partnership and based itsdecision, in part, upon the finding that Appellant hadvoluntarily "terminated" the partnership, thereby waiving(apparently) his right to having the partnership wound upaccording to law, whereas in fact he had only dissolved thepartnership without violation of the partnership agreement.
 The court erred in failing to preserve to Appellant hisinterest in the winding up value of the business upon the findingthat Appellant's economic expert's opinion "was of little or novalue herein" when, in fact, it met all the industry requirementsfor establishing the value of a business by using one of theaccepted methodologies and no expert opinion of value was adducedby Appellee.
 The court erred by granting to Appellant one-half of the netprofit earned by the partnership during its existence rather thanone-half of the value of the business at the time of dissolution,thereby depriving the Appellant of the "going concern" value ofthe business which has continued to be operated by Appellee ashis sole-proprietorship instead of winding it up as required bystatute.
 The court erred in finding that Appellant had no right to anaccounting of his interest in the partnership on the grounds thatthe value thereof would prove to be so little as not to justifythe expense of the accounting, notwithstanding the provision ofOhio Rev. Code § 1775.21 that, upon showing of breach offiduciary duty, etc., the remedy is an accounting.
Conover filed a cross-appeal and raises the following assignments of error:
The trial court erred as a matter of law by not allocating onehalf of the net profits of the partnership to appellee/crossappellant as required by R.C. § 1775.39.
 The trial court erred as a matter of law when it failed tosettle the partners' accounts in accordance with R.C. §1775.39.
 {¶ 6} In the first assignment of error, Harbison contends the trial court's order awarding only $1,938 as repayment for loans made to BTI is against the manifest weight of the evidence. Harbison contends he is entitled to the full amount of unpaid loans made to the company, which is alleged to be $8,050. In response, Conover contends there is competent and credible evidence to support the trial court's judgment. In the alternative, Conover argues that the most he is required to repay is $3,000. Conover contends Harbison cashed a check from BTI on April 2, 2001 as payment in full for loans made prior to that date. Conover argues after April 2, 2001, Harbison loaned BTI a total of $10,000 by check and in cash, and there is evidence that BTI repaid $7,000 of those loans. Therefore, Conover requests that if we enter judgment in favor of Harbison, it should be for no more than $3,000, which is the difference between the loans and payments made after April 2, 2001.
 {¶ 7} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Const. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus. See alsoIn re Emrick, 3rd Dist. No. 1-06-17, 2006-Ohio-3235. However, on "the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.
 {¶ 8} During trial, Harbison offered into evidence Plaintiff's Exhibit F, which consisted of four cancelled checks stapled together. Harbison testified that Plaintiff's Exhibit F evidences loans to BTI. (Trial Tr., Mar. 28, 2006, at 158). The first check was written on July 18, 2000 from the account of Harbison Trucking[1] to BTI in the amount of $5050. The second check, dated September 15, 2000, was also drawn on the account of Harbison Trucking to BTI in the amount of $5,000. The third check, dated June 27, 2001, was drawn on Harbison's personal account and was payable to BTI for $7,000. The fourth check, dated July 12, 2001, was also drawn on Harbison's personal account and was payable to BTI in the amount of $1,000. The checks total $18,050. The first check contains a handwritten statement, "company Deposit", on the memo line; however, the other checks contain no notation to indicate the purpose of payment.
 {¶ 9} Harbison also submitted into evidence Plaintiff's Exhibit I, which is a bank issued photocopy of a check drawn on Harbison Trucking's account. The check was dated January 29, 2001 and was payable to BTI for $5,000. On the memo line, was a handwritten notation stating, "Loan". Harbison testified the check was for a loan he made to BTI. (Trial Tr., at 158). Harbison also testified that he made two cash loans. The first cash loan was for $9,283 and was apparently made on June 7, 2001, at the same time Harbison wrote the $7,000 check included in Plaintiff's Exhibit F. (Trial Tr., at 160). Harbison admitted he had no physical evidence to document this cash loan, and that he had made a bad decision at the time. The second cash loan was for $2,000. (Trial Tr., at 160). Finally, Harbison produced Plaintiff's Exhibit E, which was a check, dated August 10, 2001, drawn on his personal account, and payable to BTI for $1,938. Harbison testified that Plaintiff's Exhibit E was a loan so BTI could pay its steel supplier and was not payment for a race car engine.[2] (Trial Tr., at 161).
 {¶ 10} If the trial court were to believe Harbison's testimony, the loans totaled $36,271, and Harbison testified that BTI repaid $17,000. On cross-examination, Conover produced Defendant's Exhibits 8 and 9. Defendant's Exhibit 8 was a photocopy of a check drawn on BTI's account and made payable to Harbison in the amount of $5,000. A handwritten note on the memo line, states, "Pay Back loan P.d in Full". Defendant's Exhibit 9 contains photocopies of two checks. Each check was drawn on BTI's account and was payable to Harbison. The first check was for $2,000 and contained the handwritten note, "pay Back loan". The second check was for $5,000, with no notation.
 {¶ 11} While Defendant's Exhibits 8 and 9, totaling $12,000, were the only checks produced to evidence repayment, both Harbison and Conover testified that BTI had repaid $17,000 in loans to Harbison. (Trial Tr., at 46, 161). Conover testified that Harbison had been paid in full for all loans. However, Conover stated that Harbison had not been repaid $1,938 because that money constituted payment for a race car engine and was not a loan. (Trial Tr., at 46, 65).
 {¶ 12} The trial court found that Harbison "is still owed the sum of $1,938.00 for the one outstanding loan made by him to the business [and] that [Harbison's] proof is lacking as to any other cash loans made by him to the business". J. Entry, Jan. 18, 2006, at 6. Because the trial court was in the better position to weigh the evidence and assess witness credibility, we cannot find its decision against the manifest weight of the evidence. The trial court found that Harbison failed to prove a cash loan of $9,283, and it apparently did not believe all the checks contained in Plaintiff's Exhibit F were loans. The trial court apparently believed Conover's testimony that BTI had repaid all loans, totaling $17,000. Finally, the trial court apparently believed Harbison's testimony that the check for $1,938, evidenced by Plaintiff's Exhibit E, was a loan to the business, which remained unpaid. There is competent and credible evidence in the record to support the trial court's decision. The first assignment of error is overruled.
 {¶ 13} In the second assignment of error, Harbison contends the trial court erred in finding the partnership "terminated" as of April 3 or 4, 2002. Harbison essentially argues that the trial court should have found that he had retired from the partnership. In response, Conover contends that the evidence supports the trial court's finding that the partnership had been terminated. Conover argues that all creditors had been paid, and essentially, that a winding up had already occurred.
 {¶ 14} We review questions of law de novo; independently and without deference to the trial court's judgment. See generallyState v. McGhee, 3rd Dist. No. 17-06-05, 2006-Ohio-5162, at ¶ 10 (citing Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992),64 Ohio St.3d 145, 147, 593 N.E.2d 286 (citing Consumers' Counselv. Pub. Util. Comm. (1979), 58 Ohio St.2d 108, 110,388 N.E.2d 1370)). The trial court found "that the Partnership know[n] as BTI Mechanical Services was terminated by action of the Parties, when they mutually agreed to terminate the same when they met on April 3 or 4, 2002." J. Entry, at 5. While we believe the trial court erred in finding the partnership "terminated", this error is not prejudicial to either party, as it appears the court simply made a misstatement.
 {¶ 15} The end of a general partnership by statutory means is achieved through a three-step process. First, the partnership will be dissolved; second, the partnership will be wound-up; and third, the partnership will be terminated. See 13 Ohio Jur. 3d Business Relationships § 1171 (citing R.C. 1775.28; 1775.29). A partnership may be dissolved by law or by the court. R.C.1775.30; 1775.31. In this case, either Harbison dissolved the partnership under R.C. 1775.30(A)(2), or Harbison and Conover mutually dissolved the partnership under R.C. 1775.30(A)(3). In either event, on or about April 3, 2002, the partnership was merely dissolved, and the parties were entitled to a winding up and subsequent termination. There is no error prejudicial to Harbison in the court's apparent misstatement as to the status of the partnership on April 3 or 4, 2002. The second assignment of error is overruled.
 {¶ 16} We will consider Harbison's third, fourth, and fifth assignments of error together. In the fifth assignment of error, Harbison essentially contends he is entitled to an accounting under R.C. 1775.42. In the fourth assignment of error, Harbison contends the trial court erred by awarding him one-half of BTI's net profits because he was entitled to one-half of BTI's "going concern." In the third assignment of error, Harbison contends the trial court erred by giving little, if any, weight to the expert testimony of Dr. Paul Govekar ("Govekar") in valuing BTI's "going concern".
 {¶ 17} In response, Conover contends the court gave the parties an accounting to the fullest extent possible based on the lack of financial records. Conover contends Harbison failed to meet his burden of proof, and the court did not err by finding a formal accounting inequitable. Furthermore, Conover contends the trial court properly gave little weight to Govekar's testimony because he knew little about BTI and his opinion was based on assumptions provided by Harbison's counsel.
 {¶ 18} R.C. 1775.42 provides for an accounting and states, "[t]he right to an account of his interest shall accrue to any partner * * * as against * * * the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary." The partnership agreement contains no provision for dissolution, so there is no agreement to rely upon. R.C. 1775.17(A)-(H) "provide a set of rules for the court to follow in determining the rights and liabilities among partners when rendering an account." Dunn v.Zimmerman, 69 Ohio St.3d 304, 307, 1994-Ohio-351,631 N.E.2d 1040. Furthermore, the party seeking an accounting bears the burden of introducing "sufficient evidence to enable the court to make a definitive accounting that states the `"true condition of affairs"' between the partners." [Bracketed material deleted]. Id. at 307 (quoting Oglesby v. Thompson (1898), 59 Ohio St. 60,64, 51 N.E. 878 (quoting Slater, Myers Co. v. Arnett (1886),81 Va. 432, syllabus)).
 {¶ 19} As to BTI's accounts, Harbison proved an outstanding loan of $1,938. The facts are undisputed that on or about April 3, 2002, BTI had $5,784.62 in its checking account, and the court found Conover had failed to prove any encumbrances on the account. Harbison contributed a capital investment of $10,000, and Conover provided his garage, tools, knowledge, and business contacts. The court found that BTI had a loss of $4,826 in 2000, a loss of $1,242 in 2001, and a gain of $8,940 in 2002. The court considered the "expert" testimony of Govekar and Katrina Hughes-Collins, BTI's accountant, and found their testimony to be of "little or no value".
 {¶ 20} "The jury may believe or disbelieve any witness", including an expert. Wood v. Gutierrez, 3rd Dist. No. 5-06-10,2006-Ohio-5384, at ¶ 34. Although a trial court admits expert testimony, the fact-finder is free to weigh that testimony and may reject it "for any reason, including reasons of unreliability, incredulity, or clarity." Id. at ¶ 33 (citations omitted). The trial court admitted Govekar's expert testimony, but opted not to believe him when he valued BTI's going concern between $2,700 and $247,717.[3] The court provided its reasons for doing so: "Govekar's testimony consisted of a range of values for the business based only upon certain scenarios as posed to him by Plaintiff's counsel. Such valuations were full of assumptions that were not verified as existing in this business." Had the trial court given no weight to Govekar's testimony, it would have been required to leave the parties where it found them. See Dunn, at 307 (citations omitted). However, it is apparent that the court placed some weight on Govekar's testimony when it valued the partnership property at $10,000 as of April 4, 2002. Such finding is within the range calculated by Govekar.
 {¶ 21} The trial court performed an accounting on those accounts supported by sufficient evidence. The court weighed the evidence and determined that Harbison had failed to present sufficient evidence as to any other account. Therefore, we cannot find the trial court erred in failing to order a formal accounting. In fact, we believe the trial court may have been generous in valuing BTI's property at $10,000. Had the court discredited Govekar's testimony, the court would have left the parties where it found them, and Harbison presented no other evidence to prove the value of the business. Harbison's third, fourth, and fifth assignments of error are overruled.
 {¶ 22} On the first cross-assignment of error, Conover contends we should enter judgment reducing the trial court's judgment by $1,436. Conover contends the trial court awarded Harbison one-half of the losses and profits for 2000, 2001, and 2002. Conover contends the total profit over that time period was $2,872, and the trial court mistakenly awarded the full value to Harbison. In response, Harbison contends the judgment entry is unclear as to how the court calculated the amount awarded. However, he contends that if we accept Conover's argument, we should also accept his argument as to the amount of loans.
 {¶ 23} The trial court found Harbison was entitled to receive "the sum of $2,872.00 which represents his one-half (1/2) of the net profits and losses for the 2000, 2001, and 2002 tax years[.]" J. Entry, at 7-8. The court also found "that the business showed the following gains or losses * * * for the years 2000, 2001, and 2002 respectively: ($4,826.00), ($1,242.00) and $8,940.00. Of course these income/loss figures do not reflect any amounts taken by way of depreciation or other deductions that are in questions [sic] on such returns." J. Entry, at 7. While the court's determination may be "unclear" to Harbison's counsel, it is quite clear to us that the trial court engaged in simple arithmetic by adding the two losses together, then subtracting the losses from the profit for a total gain of $2,872. These figures are supported by the record.
 {¶ 24} It is clear that the trial court intended to award one-half of the profits to Harbison in conjunction with the parties' partnership agreement. However, it is also clear that an award of $2,872 is not one-half of $2,872. We believe the trial court simply overlooked the final step of dividing the profits by two, and Harbison's award should be reduced by $1,436. Therefore, we sustain the first cross-assignment of error.
 {¶ 25} In the second cross-assignment of error, Conover contends that the trial court ascertained BTI's accounts, but that it failed to settle the accounts pursuant to R.C. 1775.39. Conover contends that once the account is settled under R.C.1775.39, Harbison should be entitled to a judgment of $5,969. In response, Harbison agrees that the trial court failed to settle the account pursuant to statute; however, Harbison takes issue with the values Conover assigns in reaching what he considers the proper judgment.
 {¶ 26} R.C. 1775.39 provides for settling accounts between partners after dissolution. The trial court's judgment entry does not mention R.C. 1775.39, and it does not appear to us that the trial court considered the formula provided by statute. We sustain the second cross-assignment of error so the trial court can calculate the parties' interests in accordance with the statute.
 {¶ 27} The judgment of the Hardin County Common Pleas Court is affirmed in part and reversed in part. This cause is remanded for further proceedings.
Judgment affirmed in part and reversed in part and causeremanded.
 Rogers and Cupp, JJ., concur.
[1] Harbison Trucking is an unincorporated trucking company owned and operated by Harbison.
[2] There is some testimony that Conover owns and works on race cars, and at some point, Harbison participated in racing with Conover.
[3] We note the testimony at trial that the going concern value increased with each expense Harbison's counsel instructed Govekar not to deduct from his calculations.